## FRIDAY *v.* HALL AND KAUL COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
THIRD CIRCUIT.

No. 68. Argued January 10, 1910.—Decided February 21, 1910.

"Manufacturing," as used in the Bankrupt Act of 1898, has no meaning from adjudication as used in former laws, nor has it any technical meaning. In construing the act the intention of Congress to include corporations engaged in manufacturing will be regarded by giving the term a liberal, rather than a narrow, meaning.

A corporation organized to construct railroads, buildings and other

structures, whose principal business is making and constructing
arches, walls, bridges and other buildings out of concrete, and which
buys and combines together raw materials in making the concrete
and supplies labor, machinery and materials at the place that the
contracts call for, is a corporation engaged principally in manufac-
turing within the meaning of § 4 of the Bankrupt Act as amended
February 5, 1903, c. 487, 32 Stat. 797.

158 Fed. Rep. 593, reversed.

THE Monongahela Construction Company, a corporation
organized under the law of Pennsylvania, was, in an in-
voluntary proceeding, adjudged a bankrupt in the District
Court for the Western District of Pennsylvania. Upon a
petition for review, filed by a judgment creditor, the adjudi-
cation was set aside upon the ground that the construction
company was not "a corporation engaged principally in
manufacturing," as found by the bankrupt court. The opin-
ion of the Circuit Court of Appeals is reported in 158 Fed.
Rep. 593.

From the agreed statement of facts it appears:

1st. That the Monongahela Construction Company's charter
sets out that it was organized "for the purpose of construct-
ing, erecting and repairing railroads, traction lines, duly
incorporated, and streets, roads, buildings, structures, works
or improvements of public or private use or utility."

2d. That its principal business had been "making and
constructing arches, walls, and abutments, bridges, buildings,
etc., out of concrete."

3d. That "in carrying on its business it buys and com-
bines together raw materials, such as cement, gravel and
sand in the making of concrete, and supplies labor, machinery
and appliances necessary for the proper carrying on of said
business, of constructing and erecting concrete arches, piers,
buildings and structures, and excavating therefor at such
time and place, as its contracts call for."

4th. It has no permanent shop or factory, but has a ware-
house.

*Mr. Alexander J. Barron*, with whom *Mr. Richard A. Ford* was on the brief, for appellants:

A corporation engaged in the erection of concrete walls, piers, abutments, bridges, etc., is, from the very nature of its work, of necessity, principally engaged in manufacturing. *Re Bank of Belle Fourche*, 152 Fed. Rep. 64; *Columbia Iron Works* v. *National Lead Co.*, 127 Fed. Rep. 99, 102; *Re Niagara Contracting Co.*, 127 Fed. Rep. 782; *Re Marine Const. Co.*, 130 Fed. Rep. 446; *Re Matthews Slate Co.*, 144 Fed. Rep. 737; *Re Quincy Granite Quarries Co.*, 147 Fed. Rep. 279; *Re Leighton & Co.*, 147 Fed. Rep. 311; *Re Troy Steam Laundering Co.*, 132 Fed. Rep. 266; *White Mountain Paper Co.* v. *Morse & Co.*, 127 Fed. Rep. 643; *Re Church Construction Co.*, 157 Fed. Rep. 298; *Tidewater Oil Co.* v. *United States*, 171 U. S. 216.

Manufacture is transformation—the fashioning of raw materials into a change of form for use; so held in *Kidd* v. *Pearson*, 128 U. S. 1, 20, and this definition is generally adopted by the lexicographers, such as Bouvier and Anderson, Webster (1901) and Worcester. See also *Carlin* v. *Western Assurance Co.*, 57 Maryland, 526; 5 Words and Phrases, 4347.

The bankruptcy act is not limited to those merely engaged in manufacturing commodities. *Re Rutland Realty Co.*, 157 Fed. Rep. 296.

Construction companies are not necessarily excluded from the operation of the bankruptcy act. *Re Garrison*, Fed. Cases, No. 5,254. Under the act of 1898, the companies have been held to be engaged in manufacturing in *Re Columbia Iron Works*, 127 Fed. Rep. 99; *Re Niagara Contracting Co.*, 127 Fed. Rep. 782; *Re Church Construction Co.*, 157 Fed. Rep. 298; *Re Marine Construction Co.*, 130 Fed. Rep. 446. See also state courts' decisions. *People* v. *Morgan*, 70 N. Y. 516; *Commonwealth* v. *Keystone Bridge Co.*, 156 Pa. St. 500; *Commonwealth* v. *Pittsburg Bridge Co.*, 156 Pa. St. 507.

The act of 1898, § 4b and its amendment should receive a liberal construction. *Re Mary Hatch Riggs*, 214 U. S. 9.

Where Congress enacts legislation containing words or phrases which have been judicially construed under other acts upon the same subject, it is presumed to know of such construction and to have adopted the construction of such words and phrases previously made. *United States* v. *Hermanos y Compania,* 209 U. S. 337; *United States* v. *G. Falk & Bro.,* 204 U. S. 143, 152; *The Devonshire,* 13 Fed. Rep. 39, 42.

Acts of Congress should be construed in view of the history and circumstances surrounding their enactment. *Pratt* v. *Union Pacific Railroad,* 99 U. S. 48, 62; *United States* v. *Laws,* 163 U. S. 258, 262; *Mobile & Ohio R. R. Co.* v. *Tennessee,* 153 U. S. 486, 502; *Church of the Holy Trinity* v. *United States,* 143 U. S. 457, 463; *Bond* v. *Hoyt,* 13 Pet. 273. In order to determine the purpose of Congress earlier legislation upon the same subject may be examined to arrive at a proper interpretation of a given act. *Lawrence* v. *Allen,* 7 How. 785, 792; *Re Morton Boarding Stables,* 108 Fed. Rep. 791, 794. The legislative intent prevails over the strict wording of the statute. *Church of the Holy Trinity* v. *United States,* 143 U. S. 457; *Oates* v. *National Bank,* 100 U. S. 239, 244; *Wheeler* v. *McCormick,* 8 Blatchf. 267, 276.

*Mr. Geo. L. Roberts,* with whom *Mr. Eugene H. Baird* was on the brief, for respondent:

The words "engaged principally in manufacturing" have their ordinary and usual significance. Manufacturing in the ordinary acceptance of the term, means the making of articles or commodities that can be transported or sold at some other place than that where they are made. Loveland's Bankruptcy, 147. See definitions of "manufacturing" by the leading lexicographers, such as Webster, Worcester, Universal, Standard. In no definition given by any lexicographer, is the term "manufacturing" applied to one engaged in the production or construction of an article which must be affixed to the realty, and whose use and value is destroyed the moment it is detached from the real estate to which it is affixed. See

*Re Keystone Coal Co.,* 109 Fed. Rep. 872; *Re Chicago-Joplin Lead Co.,* 104 Fed. Rep. 67; *Re Columbia Iron Works* v. *National Lead Co.,* 127 Fed. Rep. 29; *Re Niagara Construction Co.,* 127 Fed. Rep. 782, and other cases cited by appellant. *Butt* v. *C. F. MacNichol Const. Co.,* 140 Fed. Rep. 840.

In arriving at the construction of the words in this case, debates in Congress are not to be considered any more than in the construction of other acts passed by it. *United States* v. *Freight Association,* 166 U. S. 290. The words in controversy should be construed according to their common and accepted meaning. *Lewis* v. *United States,* 92 U. S. 618, 621. There should be no construction where there is nothing to construe. *United States* v. *Wiltberger,* 5 Wheat. 95; *Cherokee Tobacco,* 11 Wall. 621; *United States* v. *Temple,* 105 U. S. 97.

MR. JUSTICE LURTON, after stating the facts as above, delivered the opinion of the court.

Section four of the Bankrupt Act, as amended by § 3 of the act of February 5, 1903, c. 487, 32 Stat. 797, reads thus:

"Any natural person, except a wage-earner, or a person engaged chiefly in farming or the tillage of the soil, any unincorporated company, and any corporation engaged principally in manufacturing, trading, printing, publishing, mining or mercantile pursuits, owing debts to the amount of one thousand dollars or over, may be adjudged an involuntary bankrupt upon default or an impartial trial, and shall be subject to the provisions and entitled to the benefits of this act. Private bankers, but not national banks or banks incorporated under State or Territorial laws, may be adjudged involuntary bankrupts."

The single question is, whether the Monongahela Construction Company, upon the facts stated above, was a corporation principally engaged in the business of "manufacturing," within the meaning of the act. If it was, the adjudication should stand.

The corporate powers of the company were very broad. It

is possible that it might have so limited its functions as not to have come under any reasonable definition of manufacturing; but at last the question of whether it was principally engaged in manufacturing must turn more upon what it was actually doing than upon what it was authorized to do.

It must be conceded that the word "manufacturing," as used in the bankrupt act, has no definite legislative meaning by reason of adoption from other bankrupt acts, as is the case with the words "trader" or "trading," and perhaps other words with well-understood common law meanings.

Though British bankrupt acts were in existence from the time of Henry VIII, they applied only to "traders" until 1860, when they were extended to other persons. Our own original act, that of 1800, applied only to traders, bankers, brokers and underwriters. The act of 1841 added "merchants." The act of 1867 extended practically to all persons and corporations. That of 1898 limited the wide application of the act of 1867 to the class of business corporations enumerated. Thus it is that the words "manufacture" and "manufacturing" have no meaning derived from adjudications of any former law.

Undoubtedly Congress intended that that class of business corporations engaged in any class of manufacturing, as its principal business, and not as a mere minor incident to some larger work, should be subject to the law; and this intention should be regarded by giving to doubtful words and terms a liberal rather than a narrow meaning. "Manufacturing" has no technical meaning. It is not limited by the means used in making, nor by the kind of product produced. In *Kidd* v. *Pearson*, 128 U. S. 1, 20, Mr. Justice Field said that "manufacture is transformation, the fashioning of raw material into a change of form or use."

In *Tide Water Oil Company* v. *United States*, 171 U. S. 210, 216, Mr. Justice Brown, referring to the expansion of the meaning of the word "manufacture," said that "the word is now ordinarily used to denote an article upon the material of which labor has been expended to make the finished product."

Concrete is an artificial stone. It is a product resulting from a combination of sand or gravel or broken bits of limestone, with water and cement; a combination which requires ordinarily the use of both skill and machinery. It is not denied that if concrete in a shape adapted to use and in finished form is supplied to others for the making of a house, bridge, pier, arch or abutment, that the corporation making such blocks or shapes would be in the most narrow sense one engaged in manufacture. But it is urged that this corporation made these blocks or shapes at the place where used, and that, as finished, they became a part of a principal structure and affixed to the realty; and that, therefore, they were not engaged in manufacturing, which, say counsel, is a business confined to those who make articles which may be "transported and sold at some other place than that where made."

The production of concrete arches, or piers, or abutments, is the result of successive steps. The combination of raw material, the sand, the limestone, the cement and the water produced a product, which undoubtedly was "manufactured." This concrete had then to be given shape. That required the manufacture of moulds, which remain in place until hardening occurs. If the concrete is reinforced, as is the case where great strength is required, then the adjustment of the bars of steel within the moulds was another step. Do all of these steps, each a step in "manufacturing," cease to be "manufacturing" because the moulds into which the concrete is poured, when in a fluid state, are upon the spot where the finished product is to remain? That the operation of making and shaping the concrete is done at the place used seems rather a matter of convenience, due to the quick hardening in moulds and difficulties of transportation. But, as we may take notice, the operation which in the end is to produce an arch, or abutment, or pier, or house, is not necessarily a single operation, but one of successive repetitions of the process. The business is not identical with that of a mere builder or constructor who puts together the brick, or stone, or wood, or

iron, as finished by another. If the builder made his brick, shaped his timbers, and joined them all together, he would plainly be a manufacturer as well as a builder; and if the former ·was the principal part of the business, he would be within the definition of the bankrupt act. To say that one who makes and then gives form and shape to the product made is not engaged in manufacturing because he makes his product and gives it form and shape· in the place where it is to remain, is too narrow a construction.

In a case styled *In re First National Bank*, 152 Fed. Rep. 64, the Circuit Court of Appeals for the Eighth Circuit, in an opinion by Sanborn, Circuit Judge, sustained an adjudication of bankruptcy against a precisely similar corporation.

In *Columbia Iron Works* v. *National Lead Company*, 127 Fed. Rep. 99, the Sixth Circuit Court of Appeals adjudged that a corporation engaged principally in the business of building and repairing large steel ships for sale and upon order, who prepared and gave shape to much of the raw material, was engaged in manufacturing.

*The judgment of the Circuit Court of Appeals must be reversed and that of the District Court affirmed.*