## In re McKEE.
### Patent Appeal No. 3396.

Court of Customs and Patent Appeals.

March 4, 1935.

Roy W. Johns, of Chicago, Ill., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

### GRAHAM, Presiding Judge.

The appellant has filed a divisional application in the United States Patent Office for a patent on certain claimed improvements in meat packages. The parent application includes the method claims, and is decided concurrently herewith. In re McKee, 22 C. C. P. A. (Patents) ——, 75 F.(2d) 635. In connection with his application he has filed twenty product claims, all of which were rejected by the examiner, and, on appeal, by the Board of Appeals. These were rejected on reference to the following patents:

Habrie, 1,110,773, September 15, 1914.

Linkiewicz, 1,079,778, November 25, 1913.

Vaughan, 1,747,461, February 18, 1930.

Bird, 1,359,569, November 23, 1920.

Birdseye, 1,773,079, August 12, 1930.

Both tribunals also agreed in the view, as expressed by the examiner, that the case "is devoid of invention irrespective of the references, since the production, assembly and packaging of slices of frozen meat presents no inventive concept, nor is anything more than mechanical skill involved in carrying out the concept."

Appellant's claimed invention is fairly well described in his claims, representative of which are claims 1, 2, and 4, which are as follows:

"1. An edible carcass part containing bone and comprising component slices in their natural relation to each other and free from bone dust, the bone being sliced accordingly with the meat, the cut surfaces of said slices possessing the physical characteristics resulting from cutting such slices from a carcass part while in substantially rigid, frozen condition.

"2. An edible meat product consisting of a carcass part comprising component slices arranged in their natural positions relative to one another, in combination with enclosure means to hold the slices in their said position, the cut surfaces of said slices possessing the physical characteristics resulting from cutting such slices from a carcass part while in substantially rigid, frozen condition."

"4. As an industrial product, a bone-in ham sliced through bone and tissue and the assembled slices bound together in substantially air-tight relation to each other, the cut surfaces of said slices possessing the physical characteristics resulting from cutting such slices from a carcass part while in substantially rigid, frozen condition."

The appellant's disclosure is of a meat product in which meat, including bone, is cut into slices, which slices are left in their natural position relative to each other, and afterwards packaged by means of wires and wooden end disks so that they will remain together in their natural position relative to each other until such time as it is desired to remove the individual slices and use the same. Disclosure is also made of slices of the same kind packaged together for display purposes. The meat, before slicing, is chilled sufficiently to substantially rigidify the mass of meat.

It is also disclosed that, if desired, the cutter can be so set that the slices are not entirely severed from each other, but are retained together by a shred or uncut strip along one side of the mass of meat.

It must be borne in mind, as stated by the Patent Office tribunals, that we are here concerned, not with the method of producing the meat product, but with the product after it is produced. It is stated by the examiner correctly, as it seems to us, that the question as to whether the product contains bone or not is immaterial. This might be an element properly to be considered in determining the patentability of the process, but, so far as the product is concerned, it seems to make no inventive difference whether this product contains bone or not. It is still meat, sliced and ready for use, whether it does or does not contain bone. The product itself must be inventive, as was said in American Fruit Growers, Inc. v. Brogdex Co., 283 U. S. 1, 51 S. Ct. 328, 75 L. Ed. 801. The statute, section 4886, Revised Statutes, as amended (35 USCA § 31), recites: "Any person who has invented or discovered any new and useful art, machine, manufacture, or compo-

sition of matter," may have a patent therefor. This was under consideration in the above-cited case, in which the Supreme Court held that the addition of borax to the rind of a natural fruit did not constitute invention of a manufacture, since the resulting product remained a fresh fruit, fit only for the same beneficial use as before. Again, it was said in Hartranft v. Wiegmann, 121 U. S. 609, 7 S. Ct. 1240, 30 L. Ed. 1012, that cleansing and ginning cotton did not make the resulting cotton a manufacture of cotton.

Examining the application here by the light of the references, we are unable to discern wherein any new and useful manufacture or composition of matter is here disclosed.

The reference Linkiewicz discloses a meat slicing machine which slices the meat, leaving the severed slices in substantially their original position.

The reference patent to Habrie, although applicable to a bread cutting apparatus, discloses cutting of bread, leaving an uncut portion which connects the slices together so that they will be left in their natural position, thus excluding the air.

The reference to Birdseye discloses the packaging of slices of layers of a food product and then freezing the same for preservation. These slices may be separated from each other by separate wrappings. The idea of packaging goods with end boards and wire is old, as shown by the reference Bird.

It is argued by the appellant that in the patent to Birdseye the meat is first cut and then frozen. This might be a matter for consideration if a process were here involved. However, we are now considering the product, and whether the freezing precedes or follows the slicing is of no importance, so far as the product is concerned. It is said Birdseye's slices might adhere to each other, but Birdseye discloses that he may separate his slices so that this will not happen. In the end, both Birdseye and the appellant have frozen slices of meat, easily separable, in contact with each other. Therefore there is nothing inventive in this respect in appellant's disclosure. Whether the meat is first frozen and then sliced, or vice versa, concerns the method and not the product.

Claims 1 and 8 present an additional feature, namely, that the product is "free from bone dust," and this is claimed to be inventive. The Patent Office tribunals cite the reference Vaughan, which shows a band saw moving at high speed, and which the patent recites, in substance, leaves the slices as if they were cut with a knife. It is argued that any saw will leave bone dust, and that appellant's product has no such dust, and that it therefore is a new article of manufacture. It is doubtless true that some bone dust will be left by the use of Vaughan's saw. However, it is not thought that this feature imparts invention to appellant's product. It is rather a question of the cleanness or purity of appellant's sliced meat than that it constitutes a new and useful article of manufacture.

Somewhat analogous conditions existed in In re Fink, 62 F.(2d) 103, 104, 20 C. C. P. A. (Patents) 716, and In re Schibsted, 49 F. (2d) 823, 18 C. C. P. A. (Patents) 1430. In the first-cited case we said: "The board and the examiner both held that the purity of the product was merely a matter of degree. While there might be invention in the method of making such a product, the product itself, as far as is defined by the claims, shows nothing of patentable merit."

We are of opinion that the claims were properly rejected, and the decision of the Board of Appeals is affirmed.

Affirmed.