### ARMATURE EXCHANGE, Inc., v. UNITED STATES.

No. 8437–Y.

District Court, S. D. California, Central Division.

June 16, 1939.

Darius F. Johnson, of Los Angeles, Cal., for plaintiff.

Ben Harrison, U. S. Atty., and Armond Jewell, Asst. U. S. Atty., both of Los Angeles, Cal.

YANKWICH, District Judge (after stating the facts as above).

In Section 606(c) of the Revenue Act of 1932, the Congress provided:

"There is hereby imposed upon the following articles, sold by the manufacturer, producer, or importer, a tax equivalent to the following percentages of the price for which so sold:

\* \* \*

"(c) Parts or accessories (other than tires and inner tubes) for any of the articles enumerated in subsection (a) or (b), 2 per centum."

This is followed by certain definitions and enumerations of specific articles, which do not concern us.

The Government, in insisting that the tax on rewound armatures was collected rightfully, relies on the preamble of this subdivision, and mainly on the words "manufacturer" or "producer."

The verb "manufacture" is thus defined in Webster's Unabridged Dictionary, latest (1937) edition: "Manufacture. To make (wares or other products) by hand, by machinery, or by other agency; as, to manufacture cloth, nails, glass, et cetera."

A manufacturer, of course, is "one who manufactures. A factory operative. An employer of operatives in manufacturing; the owner of a manufactory."

The verb "produce" is almost synonymous with "manufacture." I think, in a certain sense, a thing may be produced, although it is not manufactured, because it may be the result of the assembling of various parts; but, ordinarily, the words are the same. The same dictionary gives this definition of "produce": "To give being or form to; to manufacture; make; as, he produces excellent pottery." And the definition of producer is "one who produces, brings forth, or generates."

**14**

The Internal Revenue Bureau, in Regulations 46, relating to excise taxes under the Revenue Act of 1932, gives a different interpretation to the word. Article 4, page 3 of the Regulations states: "As used in the Act, the term 'producer' includes a person who produces a taxable article by processing, manipulating, or changing the form of an article, or produces a taxable article by combining or assembling two or more articles."

■ Doubts arising in the interpretation or the application of a taxing statute to a particular set of facts are resolved against the taxing body. Erskine v. United States, 9 Cir., 1936, 84 F.2d 690; Commissioner v. Bryson, 9 Cir., 1935, 79 F.2d 397, per Denman, J.; Miller v. Standard Nut Margarine Company, 1932, 284 U.S. 498, 52 S. Ct. 260, 76 L.Ed. 422; General Petroleum Corp. v. United States, D.C., 1938, 24 F. Supp. 285.

■ The problem, then, is whether a product, which has been known to the trade and has been on the market for over fifteen years and which is designated by the person who makes it as a "rebuilt armature", is taxable as a "manufactured" article. · In a sense, of course, any transformation, resulting from the labor of man, may be considered manufacturing. And where, as in the Bankruptcy Act, 11 U.S.C.A. § 1 et seq., the legislative intent is to subject the largest group of persons or corporations to its provisions, courts have given to the word "manufacture" its broadest sense. Friday v. Hall & Kaul Co., 1910, 216 U.S. 449, 30 S.Ct. 261, 54 L.Ed. 562, 26 L.R.A.,N.S., 475.

■ However, in taxation statutes, it has been given its narrower meaning—that of production of articles for use from raw and prepared materials by giving them new forms, qualities and properties or combinations. This excludes repairing or processing aiming to complete an article or to restore it to its former condition. State v. J. J. Newman Lumber Company, 1912, 102 Miss. 802, 59 So. 923, 45 L.R.A.,N.S., 851; 4 Words and Phrases, Second Series, page 272; 6 Words and Phrases Third Series, page 707.

■ Thus in Hartranft v. Wiegmann, 1887, 121 U.S. 609, 615, 7 S.Ct. 1240, 1243, 30 L.Ed. 1012, the court held that persons engaged in the business of cleaning shells by acid and grinding them on an emery wheel and then etching them, sometimes by acid, so that they might be sold as ornaments, were not *"manufacturers of shells"*, saying: "We are of opinion that the shells in question here were not manufactured, and [appellees] were not manufacturers of shells, within the sense of the statute imposing a duty of 35 per centum upon such manufactures, but were shells not manufactured, and fell under that designation in the free list. They were still shells. *They had not been manufactured into a new and different article, having a distinctive name, character or use from that of a shell. The application of labor to an article, either by hand or by mechanism, does not make the article necessarily a manufactured article, within the meaning of that term as used in the tariff laws. Washing and scouring wool does not make the resulting wool a manufacture of wool. Cleaning.and ginning cotton does not make the resulting cotton a manufacture of cotton."* (Italics added)

Before a "manufacture" may be said to exist, the change made in an article must result in a new and different one. As said in Anheuser-Busch Ass'n v. United States, 1908, 207 U.S. 556, 562, 28 S.Ct. 204, 206, 52 L.Ed. 336: "The words of the statute are indeed so familiar in use and of meaning that they are confused by attempts at definition. Their first sense as used is fabrication or composition,—a new article is produced of which the imported material constitutes an ingredient or part. When we go further than this in explanation we are involved in refinements and in impracticable niceties. *Manufacture implies a change, but every change is not manufacture, and yet every change in an article is the result of treatment, labor, and manipulation. But something more is necessary, as set·forth and illustrated in Hartranft v. Wiegmann, 121 U.S. 609, 7 S.Ct. 1240, 30 L.Ed. 1012. There must be transformation; a new and different article must emerge, 'having a distinctive. name, character or use.'"* (Italics added)

These cases have been followed consistently. The quotations just given were adopted by the Court, in 1931, in interpreting the word "manufacture" in the patent statute, in American Fruit Growers, Inc., v. Brogdex, 1931, 283 U.S. 1, 11, 12, 51 S. Ct. 328, 75 L.Ed. 801. And see, In re McKee, Cust. & Pat. App., 1935, 75 F.2d 636, 638.

Applying this principle, the following processes have been held, among others,

not to constitute "manufacturing": *Automobile repairing* (Cate v. Connell, 1 Cir. 1909, 173 F. 445); *house construction* (In re Kingston Realty Co., 2 Cir. 1908, 160 F. 445); *replacement of automobile bodies* (Thurman v. Swisshelm, 7 Cir. 1929, 36 F.2d 350).

Instances of repairs or restorations of parts of automobiles, some of the type here involved, others of a different type, which have been declared not to amount to "manufacturing" are: *Retreading tires,* (Skinner Tire & Rubber Co. v. United States, D.C., 1934, 8 F.Supp. 999); *rebuilding armatures* (Monteith Bros. Co. v. United States, D.C., Ind.1936, 18 American Federal Tax Reports, 1320); *rebabbiting connecting rods* (Hempy-Cooper Mfg. Co. v. United States, D.C.Mo., 1937; 19 American Federal Tax Reports, 1313; Bardet v. United States, D.C.Cal.1938, Prentice-Hall Federal Tax Current Court Decisions for 1938, Par. 5.507); *rebuilding generators and armatures* (Becker-Florence Electric Co. v. United States, D.C.Mo., 1938, Prentice-Hall Federal Tax Service Current Court Decisions for 1939, Par. 5.161).[1]

■■ The evidence shows that the business of the plaintiff here is that of reconditioning or restoring armatures, on which the wiring has been worn out, to their original state. By a process which is described fully in my introductory note to this opinion, there is produced a rebuilt armature, which, in shape, form, function, and performance, is identical with that of the original new armature before the wiring had been worn down or burned out by use. In the process of rewiring, the central part of the armature, the core, i. e., the shaft, the laminated core, and the commutator, made of copper, are retained. There is no change in form. The restored article can be used only in the type of automobile for which it was originally designed.

Because the plaintiff engages in the business on a large scale—instead of giving individual service to each person who brings in a worn-out armature for the purpose of having it rewound—it is its practice to require jobbers to turn in, in exchange, worn-out armatures. And when a person comes in to purchase a rewound armature, instead of being given back his own core, he is given a different core of the same kind, upon which the rewinding has been done.

Ninety per cent of the sales are to purchasers who bring in original cores in exchange.

The central component parts, the shaft, the laminated core and the commutator, are not replaced when they are damaged beyond repair. When this is the case, the cores are thrown away.

So that, in the last analysis, we have here merely a process of repair and res-

[1] The government relies upon two cases which, seemingly, are the other way. Clawson and Bals, Inc. v. Harrison, D. C.Ill.1938 [no opinion for publication]; Edelmann & Co. v. Harrison, 1939 [no opinion for publication]. In the first case, Judge Barnes, admitting frankly that his opinion is contrary to other adjudications, held that rebuilt connecting rods sold on the same basis or on the same warranties as those produced from entirely new materials, involved the process of manufacture. It seems to me that Judge Barnes was influenced by the fact that the company held itself out as a manufacturer and that his determination of the matter was grounded chiefly upon a broad definition of "manufacturing," which has been rejected by our higher courts, when dealing with taxing statutes. His opinion says:

"The situation here seems to be much like the situation in the worn-out tire case. Those worn-out tires look like tires. These worn-out connecting rods undoubtedly look like connecting rods, and one can recognize that they have been connecting rods, just as one can by looking at a worn-out tire recognize the fact that it has been a tire. But in each case, the articles are worn out. *A manufacturing process is, in the opinion of the court, required to make a serviceable product; and in the case of the connecting rod, the plaintiff carries on that manufacturing process.*" (Italics added)

The second case does not contain an opinion, but merely findings. Findings do not always indicate the legal theory of the decision. But it is evident that the court there was dealing with a concern which was manufacturing armatures and generators, *sometimes from new materials* and *sometimes from a combination of new materials and worn-out parts.* One can readily see that where it is hard to segregate newly manufactured articles from rebuilt articles, the taxpayer is not entitled to the benefit of the doubt as to the application of a taxing statute to him. In any event, I believe that the definition of "manufacturing" which I have adopted is more in line with the rulings of the higher courts on the subject.

16

toration, aiming to restore an article, a portion of which has been worn away by use. And the article, which is the result of this repair or restoration, is a rebuilt article in which there is no change of form, no new combination, or assembly, but merely the replacement of a worn-out part of a standard article of commerce.

I do not think the Congress of the United States intended this to be considered a "manufacture", or the person who engages in this process a "manufacturer" or "producer", and *thus subject the same article to taxation in its rebuilt form, after it had already been taxed in its new form.*

If a person with mechanical skill were asked to rewind an armature, by one who paid him the value of his labor and materials, would the process be one of manufacturing? I do not think so. The fact that this company does this on a large scale does not alter the situation. In neither case are we dealing with a "manufacturer" or "producer".

Judgment will, therefore, be for the plaintiff for the amount sued for, with interest to be computed according to the amounts and the dates of payments.