CONCRETO MIXTO, INC., Plaintiff and Appellant, *v.* SECRE-
TARY OF THE TREASURY, Defendant and Appellee.

No. R-64-137.        Decided March 11, 1965.

*Miguel Marcos Contreras* and *R. Elfrén Bernier* for appellant.
*J. B. Fernández Badillo, Solicitor General, Carlota Capó* and
*Elpidio Arcaya, Assistant Solicitors General,* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The Secretary of the Treasury assessed and levied a tax on the taxpayer's construction material on hand as of January 1, 1962, which consisted of sand, gravel and cement. The taxpayer requested, without success, reimbursement of the tax which amount to $5,191.91, on the grounds that the tax was levied on raw materials used in the business of manufacturing ready-mixed concrete and that such raw material is exempt from the payment of property tax under the provisions of Act No. 61 of May. 5, 1945, as amended by Act No. 30 of March 30, 1950 (13 L.P.R.A. § 560 *et seq.*). The Superior Court sustained the Secretary's determination.

The following provisions exempt raw material from taxation:

13 L.P.R.A.—"§ 560. Raw materials exempted—Definition

For the purposes of sections 560–563 of this title, by 'raw material' shall be understood not only products in their natural form derived from agriculture or from the so-called extractive industries, but any by-product, any semi-manufactured product, or any finished product, provided the same is used either as an ingredient or an integral part of another industrial product, so that when the industrial process is carried out, said raw material shall come wholly and completely to form a part of the finished product, or shall be completely consumed, be wholly extinguished, and cease to exist."

13 L.P.R.A.—"§ 561.—Finished products defined

By 'finished product' shall be understood that article for commerce which is obtained by combining two or more raw materials or submitting one or more of them to industrial processes, provided that in one or the other case predetermined methods are used and labor is used directly or indirectly."

13 L.P.R.A.—"§ 562. —Exemption from property taxes

The raw material that can be guaranteed to be destined for the production of finished articles, shall be exempt from the

payment of property taxes while it remains in the possession of the producer of the finished article."

■ These and other similar provisions[1] on tax exemptions reflect the public policy of the Commonwealth of Puerto Rico which is to create, in addition to agriculture and the already existing sugar industry, new sources of employment in order to resolve the serious problem of unemployment through an intensive industrialization of the Island. *Descartes, Treas.* v. *Tax Court,* 78 P.R.R. 83 (1955); *General Cigar Co.* v. *Secretary of the Treasury,* 78 P.R.R. 443 (1955).

In order to decide whether the material used by the taxpayer in its business is protected by the exemption because it is within the purposes pointed out by the Legislature, it is necessary to know first the operation of the taxpayer's business, since the language of the statute may lead to several interpretations.

We know, because of a memorandum which was filed with the Superior Court which appears in the original records, that Jorge A. Juncos, General Manager of taxpayer corporation, explained the operation as follows:

"a.—The operation consists in the mixing, in a predetermined manner, of the above-mentioned ingredients with water, and sometimes with certain additives, for sale to the public.

"b.—He explained that the sand, gravel, and cement are weighed and mixed and then carried in a special truck to be delivered to the buyer. The witness stated that 60% of the time the gravel, sand, and cement are delivered mixed but dry and the water is added at the place of delivery. The water constitutes about 15% of the weight of the mixed concrete. Upon arrival at the place of delivery the truck driver adds the necessary water which is also carried in a tank on the truck. If a delivery is nearby the water is added before the truck leaves the plant. In a few cases sand or gravel is sold separately to a client.

---

[1] See § 16B of the Internal Revenue Act (13 L.P.R.A. § 1070).

"c.—The product is sold directly to users or consumers.

"d.—The witness added that, in his opinion, 95% of the contractors buy ready-mixed concrete from specialized mixers.

"e.—The taxpayer's witness admitted that the ready-mixed concrete cannot be stored.

"f.—Juncos admitted that concrete mixed by consumers is the same product as that processed and served by the taxpayer, except that the product prepared by them is uniform."

We have seen that the law exempts from property taxes "raw material" which may be guaranteed to be destined for the production of *finished products* while the raw material remains in the possession of the producer of the finished product. Raw material which is used as an ingredient or an integral part of another industrial product qualifies for the exemption if, when the industrial process is carried out, the raw material wholly and completely becomes part of the finished product or is completely consumed, wholly extinguished, or ceases to exist.

■ So, exempt raw material is raw material which, (1) used as an ingredient, or as an integral part of another industrial product, (2) used through an industrial process, and (3) when the industrial process is carried out, the raw material becomes, wholly and completely, part of the finished product, or is completely consumed, wholly extinguished, or ceases to exist.

■ We also know that a "finished product" is a commercial article obtained by placing together two or more raw materials or by submitting them to industrial processes using, in either case, predetermined methods and labor, whether directly or indirectly applied.

■ It cannot be maintained that all the components of ready-mixed concrete, such as stone and gravel, when mixed with water, are completely consumed, wholly extinguished, or cease to exist. Therefore, the taxpayer would have to base its claim for exemption on the fact that such com-

860

ponents, in carrying out the industrial process, wholly and completely, form part of the finished product.

We have to agree with the Superior Court that what the taxpayer sells directly to consumers is not a finished product as intended by the Legislature in providing the exemption. That is, it is not a commercial article whose production was intended to be stimulated through the incentive of a property tax exemption on raw materials used.

■ The product sold to the consumers by the taxpayer is the same product prepared by them for cement constructions, the only difference being that the taxpayer's product is more uniform. In sixty percent of the cases the ingredients, even though mixed, are delivered to the consumer dry and the water is added at the time of delivery. The resulting product is a mixture of sand, gravel, and cement with water. The product is then poured into concrete forms previously prepared with reinforcing rods and other materials, where the mixture hardens, until the wall, floor, building, etc., is constructed. The so-called predetermined method which is used by the taxpayer consists in weighing the sand, gravel, and cement which are to be mixed with water. It is difficult to agree with the taxpayer that it manufactures a finished product,[2] even though the rule of restrictive inter-

---

[2] We agree with the following reasoning of the Solicitor General:

"It is well known that there exists difficulty in determining with legal exactness what is or is not 'manufacturing,' or what state of a business or plant is engaged in manufacturing production.

"We have to admit that there are certain cases in American jurisprudence interpreting language of certain special statutes where the conclusion is reached that ready-mixed concrete constitutes a manufactured product. This has occurred where there has been a need to interpret words, phrases or sentences which appear clear in the statutes. *Commonwealth* v. *McCrady-Rodgers Co.*, 316 Pa. 155, 174 Atl. 395, 397.

"We do not believe that in the case at issue the concept of 'industry' or 'manufacturing' has the implication that the taxpayer-appellant tries to attribute to it in order that its right to claim the personal property-tax exemption on construction materials or raw materials used in the preparation of ready-mixed concrete may be recognized.

"It has been stated several times that a 'manufactured' article is

pretation is not applied in the interpretation of exempting statutes, which rule we would not apply if its application would tend to defeat the legislative intent. *Francis* v. *Tax Court,* 74 P.R.R. 18 (1952).

This history of House Bill 365, which later became Act No. 30 of March 30, 1950, shows that the Legislature did not intend to establish the exemption claimed by the taxpayer. In *General Cigar Co.* v. *Sec. of the Treasury,* 78 P.R.R. 443 (1955), this Court stated on page 448:

". . . When Bill No. 365 which later became Act No. 30 of March 30, 1950, was approved in the House of Representatives

---

one which, for all pertinent purposes, results in a totally new product with a distinctive name, characteristics, and use when compared with those of its raw materials. *Commonwealth* v. *Dyer Quarry Co.,* 95 Atl. 797.

"In *Kidd* v. *Pearson,* 128 U.S. 1, 20, it is stated:

'Manufacture is transformation—the fashioning of raw materials into a change of form for use.'

"In *Friday* v. *Hall & Kaul,* 216 U.S. 449, 452, it was also stated that:

'Manufacturing in the ordinary acceptance of the term, means the making of articles or commodities that can be transported or sold at some other place than that where they are made.'

"But who may validly deny that the final dynamics of the ready-mixed concrete as a finished product is only reached when the mixture attains its hardening point? Is not the use of concrete forms, iron rods, and a period of time perhaps necessary before the ready-mixed concrete can become a product or by-product? At which precise stage may it be logically affirmed that the product has become a finished product or by-product?

"The processing of ready-mixed concrete requires in order that it may be considered a totally or partially finished product or by-product, the reaching of a hardening point which cannot be obtained without the use of forms, iron rods, nails, etc. So, the storage which is so indispensable in order that a product be classified as a finished product or by-product is completely impossible. In our judgment the mixing of concrete merely represents a phase or stage just as the building of forms, the placement, the embedding and fastening of rods, and the pouring of the mixture into the moulds to produce the characteristics of a manufactured product, represent stages in becoming a finished product.

"But, aside from all that has been said, one thing is that ready-mixed concrete be a manufactured product completely different from the raw material used in its manufacture, and, another thing is that our Legislature had intended to exempt from personal-property taxation the gravel, sand, and cement because they are used in the production of ready-mixed concrete." (Solicitor General's memorandum, pp. 3 and 4.)

of Puerto Rico, the then representative Mr. Benjamín Ortiz in explaining its scope stated, among other things, the following: 'The amendments suggested for this Act are directed to block slightly this wide loophole [referring to the list of products which would remain exempt from property taxes] but always maintaining *the legislative intent of stimulating industry.'* "

The Superior Court did not therefore err in sustaining the Secretary of the Treasury's determination.

The judgment, object of this review, will be affirmed.