# COMPTROLLER OF TREASURY *v.* CROFTON COMPANY

[No. 17, October Term, 1951.]

 

 

 

*Decided November 1, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Robert M. Thomas*, Assistant Attorney General, with whom were *Hall Hammond*, Attorney General, and *Edward F. Engelbert*, Staff Attorney, Retail Sales Tax Division, Office of the Comptroller, on the brief, for the appellant.

No brief and no appearance for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a judgment for refund, with interest, of $182.48, collected as use tax with interest. The only question presented is whether the use, by a construction company in the construction of houses, of slate which is not readily obtainable in Maryland, is exempted from the use tax under section 310 (f) of the Use Tax Act. Article 81, secs. 308-337, Code, 1947 Supp.; Acts of 1947, ch. 681; 1947, Sp. Session, ch. 3; as subsequently amended.

An obvious purpose and effect of the use tax is to complement the retail sales tax (Article 81, secs. 259-307, Code, 1947 Supp.; Acts of 1947, ch. 281; 1947 Sp. Session, ch. 2; as subsequently amended) by imposing, in respect of purchases made outside Maryland (and therefore not subject to the sales tax) for use in Maryland, a compensating use tax and thereby avoiding unfair discrimination and promoting equality between Maryland dealers and dealers in other states, and between purchasers in Maryland and purchasers outside Maryland for use in Maryland. The sales tax is imposed on the price of each retail sale (as defined, including certain selected services) made in this state. Section 260. The use tax is imposed "on the use, storage or consumption in this State of tangible personal property purchased from a vendor within or without this State * * * for use, storage or consumption within this State". Section

309. "Sale at retail" expressly includes "(2) The sale of building materials to contractors, builders or landowners for use or resale in the form of real estate". Section 308 (h) (2). The Retail Sales Tax Act contains a provision in identical terms. Section 259 (f) (3). In *State v. Christhilf*, 170 Md. 586, 185 A. 456, this court in effect held that "selling tangible personal property at retail", without definition, includes what is expressly included by sections 308 (h) (2) and 259 (f) (3). On that question decisions in other states are in conflict, some in accord with the *Christhilf* case, some to the contrary. Since in terms the sales tax is imposed on retail sales and the use tax on the use of property purchased, the pertinence of a definition of "sale at retail" in the Use Tax Act is not apparent. However, other provisions of the Use Tax Act make it clear that in effect the use tax is imposed only on the use of property purchased at retail. The definition of "sale at retail" is thus in effect a definition of a purchase in respect of which the use tax is imposed.

"Use" shall not include "the incorporation of tangible personal property as a material or part of other tangible personal property to be produced for sale by manufacturing, assembling, processing or refining." "Storage" shall not include "the keeping or retention of possession in this State of tangible personal property for the purpose of incorporating said property as a material or part of other tangible personal property to be produced for sale by manufacturing, assembling, processing or refining." Section 308 (d) (2) and (e) (2). Under the Retail Sales Tax Act "sale at retail" shall mean "all sales of tangible personal property * * * for any purpose other than those in which the purpose of the purchaser is to resell the property * * *, or to use or incorporate the property so transferred, as a material or part, of other tangible personal property to be produced for sale by manufacturing, assembling, processing or refining." Section 259 (f).

Scetion 310 provides, "The use, storage or consumption in this State of the following tangible personal property is hereby specifically exempted from the tax imposed by this subtitle: (a) Tangible personal property upon which a retail sales tax has been paid to this State under the terms and provisions of Section 260 of this Article. (b) Tangible personal property expressly exempted from the retail sales tax imposed by this State under the terms and provisions of Section 261 of this Article. (c) Tangible personal property sold by any non-resident vendor to a purchaser, a resident of this State, if the sale thereof would have been exempt from the retail sales tax imposed by this State under Section 261 of this Article had said sale been made in this State. * * * (f) Tangible personal property not readily obtainable in Maryland which is stored, used or consumed in this State by a person engaged in the business of rendering services, or manufacturing, compounding for sale, profit, or use of any article, substance or commodity, if such tangible personal property enters into the processing of or becomes an ingredient or component part of the product or service which is manufactured, compounded or furnished and the container, label or the furnished shipping case thereof." Section 310 (a) (b) (c) restrict the use tax, in application, to a compensating tax, complementary to the retail sales tax. The question now presented is a question of construction of section 310 (f). Is a builder of houses "engaged in the business of * * * manufacturing, compounding for sale, profit or use of any article, substance or commodity"? Is a house a "product * * * which is manufactured [or] compounded * * *"? Judge Tucker in a well-reasoned opinion answers both of these questions in the affirmative. He holds that the dictionary meanings of "manufacture", "article", "product" and other words are broad enough to warrant these answers. He adds, "Moreover, it would have been unnecessary to enact section 310 (f) in order to exempt from the tax tangible personal property that was to become part of a product produced for sale, because such property

is specifically exempted by provisions of sub-sections (d) (2) and (e) (2) of section 308."

We would not belittle the force of these considerations. "Manufacture", "product" and like words are words of broad scope. Like other words, they must be construed, broadly or narrowly, in the light of their context and the legislative purpose. A corporation whose principal business is constructing concrete bridges and other structures is "engaged principally in manufacturing", within the meaning of the Bankrupt Act. *Friday v. Hall and Kaul Co.*, 216 U. S. 449, 30 S. Ct. 261, 54 L. Ed. 562. In the course of so holding the court said, " 'Manufacturing' has no technical meaning. It is not limited by the means used in making, nor by the kind of product produced. In *Kidd v. Pearson*, 128 U. S. 1, 20, 9 S. Ct. 6, 32 L. Ed. 346, 350, Mr. Justice Field said that 'manufacture is transformation, the fashioning of raw material into a change of form or use.' In *Tide Water Oil Company v. United States*, 171 U. S. 210, 216, 18 S. Ct. 837, 43 L. Ed. 139, 140, Mr. Justice Brown, referring to the expansion of the meaning of the word 'manufacture,' said that 'the word is now ordinarily used to denote an article upon the material of which labor has been expended to make the finished product'." 216 U. S. 454, 30 S. Ct. 262. In holding that a canning company was "actually engaged in manufacturing", within the meaning of a tax ememption statute, this court said, "It is difficult to say in the abstract what is and what is not a manufacturing industry. What might be a manufacturing industry when defined or construed in connection with a statute exempting tools, machines, engines, etc., from taxation, might not be so held when considered in connection with a statute having a different object or purpose." *Carroll County v. Shriver Co.*, 146 Md. 412, 417, 126 A. 71, 72. The converse is no less true. In *Frederick Electric Light and Power Company v. Frederick City*, 84 Md. 599, 36 A. 362, 36 L. R. A. 130, we held that an electric light company is not a manufacturing industry under a similar tax exemption ordinance.

As the Attorney General points out, section 310 (f), however narrowly construed, would not be a mere duplication of section 308 (d) (2) and (e) (2), since the latter are applicable only to incorporation of personal property "as a material or part of other tangible personal property to be produced for sale by manufacturing", whereas section 310 (f) is applicable if the personal property "enters into the processing of or becomes an ingredient or component part of the product". On the other hand, whether broadly or narrowly construed, section 310 (f) does in part duplicate section 308 (d) (2) and (e) (2). Furthermore, to the extent that section 310 (f) is not a duplication of section 308 (d) (2) and (e) (2), it is an exemption new in the Use Tax Act and without a parallel in the Retail Sales Act and is a departure from the basic purpose of the act to complement the retail sales tax by a compensatory tax.

If sections 308 (d) (2) and (e) (2) and 310 (f) had originated together as subsections of section 308, defining "use", "storage", "sale", etc., we might find difficulty in holding that "product of manufacture" means no more than "tangible personal property to be produced by manufacturing". But these provisions did not so originate and were not so classified. Section 310 (f) was no part of the original bill which was introduced in the Senate and passed without amendment. Section 310 (f) was inserted by an amendment in the House, which the Senate accepted. It is not a definition but an exemption. We must apply the familiar rules that an exemption from taxation must be strictly construed and to doubt is to deny the exemption. The words of the statute permit, but do not compel, a broader construction. Although it may be verbally correct to speak of "manufacturing a house" this is not common usage. Limited to manufacture of personal property, the exemption is applicable only to transactions which will usually result in a sales tax. This construction is more in accord with the purpose of the use tax. It may be said of the use tax, as the Supreme Court, by Mr. Justice Cardozo,

said of a Washington use tax, "The plan embodied in these provisions is neither hidden nor uncertain. * * * The practical effect of a system thus conditioned is readily perceived. One of its effects must be that retail sellers in Washington will be helped to compete upon terms of equality with retail dealers in other states who are exempt from a sales tax or any corresponding burden. Another effect, or at least another tendency, must be to avoid the likelihood of a drain upon the revenues of the state, buyers being no longer tempted to place their orders in other states in the effort to escape payment of the tax on local sales." *Henneford v. Silas Mason Co.,* 300 U. S. 577, 581, 57 S. Ct. 524, 526, 81 L. Ed. 814.

In *Morrison-Knudson Co., Inc. v. State Board of Equalization,* 58 Wyo. 500, 510-516, 135 P. 2d 927, a Wyoming use tax exemption, substantially the same in its operative words as section 310 (f), was construed as not applicable to building materials used in the construction of a dam.

*Judgment reversed, with costs.*