Dear Honorable William Donald Schaefer Comptroller
You have requested our opinion concerning the implementation of Chapter 557, Laws of Maryland 2004. That law establishes a special settlement period for taxpayers affected by the recent decision in Comptroller v. SYL, Inc., 375 Md. 78, 825 A.2d 399, cert. denied, 124 S.Ct. 478 (2003). The SYL decision rejected a tax avoidance strategy adopted by some corporations that involved deductions for payments to subsidiaries commonly known as tax — haven subsidiaries or "Delaware holding companies." Entities that employed that strategy are subject to assessment by the Comptroller for unpaid taxes.
As part of the settlement procedure created by Chapter 557, a corporation may elect between two methods of computing the additional tax owed for the period 1995 through 2003. Under one alternative, deductions for payments to the subsidiary are eliminated, thus increasing the income of the parent company. Under the second alternative method, deductions for the parent would be maintained, and the additional tax is computed as though the subsidiary were a separate entity subject to the Maryland corporate income tax. You have asked two questions concerning the application of this provision of Chapter 557:
(1) May a corporation make a different election for a subsidiary for each of the tax years included in the settlement period?
(2) If a corporation made payments to more than one subsidiary, may it make a separate election as to each subsidiary?
In our opinion, a corporation must make a single election for each subsidiary; however, it may make separate elections for each subsidiary to which it made payments.
 I Background
Corporations that have a nexus with Maryland are subject to the State income tax. Annotated Code of Maryland, Tax-General Article ("TG"), § 10-102. The starting point for determining the Maryland taxable income of a corporation is its federal taxable income, subject to certain modifications. TG § 10-301 et seq. The State tax law also includes rules for allocating income for tax purposes for corporations that conduct business in other states, as well as Maryland. TG § 10-402.
A. The SYL Decision
The SYL decision arose from two cases in which companies subject to the Maryland corporate income tax attempted to reduce their tax liability through the use of tax-haven subsidiaries. Each company created a wholly owned subsidiary in another jurisdiction and transferred intellectual property assets, including patents and trademarks, to the subsidiary. (That jurisdiction — Delaware — generally does not tax income derived from intangible assets.) Each company then entered into an agreement with its subsidiary, under which the subsidiary granted a license to the parent corporation to use the intellectual property assets and in return received a percentage of the parent company's revenue as a royalty. The parent company deducted those royalty payments in computing its income subject to the Maryland corporate income tax and, as a result, was able to reduce its tax liability. The subsidiary, which had no property or employees in Maryland, did not file a corporate income tax return in Maryland. 375 Md. at 80-99.
With respect to each case, the Court of Appeals held that the subsidiary had no economic substance as a business entity separate from its parent and also had a substantial nexus with Maryland. Thus, a portion of the subsidiary's income was subject to the Maryland income tax, based on the amount of the parent company's business in Maryland.375 Md. at 106-9.
B. Comptroller's Settlement Offer
In addition to the companies involved in the SYL case, the Comptroller assessed additional tax liability against a number of corporations with tax-haven subsidiaries. In the fall of 2003, after the Supreme Court declined to review the SYL decision, the Comptroller publicly offered a settlement to 70 companies that had been assessed more than $31.4 million in unpaid income taxes. That offer required the payment of back taxes and interest at the statutory 13% rate[1] in return for the Comptroller's agreement to impose a 2% penalty rather than a 25% penalty, as allowed by statute.[2] See Comptroller Schaefer Offers Settlement Deal to Delaware Holding Companies (Comptroller's Press Release, December 2, 2003).
C. Chapter 557
During its 2004 session, the General Assembly enacted legislation embodying a settlement proposal with more attractive terms, but a limited duration. Chapter 557 directs the Comptroller to administer a special settlement period for taxpayers subject to assessment under the principle established in SYL, and sets parameters for settlements during that period.[3] Chapter 557, § 1(a)-(b). The legislation creates a brief window (July 1 through November 1, 2004) to effect such settlements. Id. During that period, the Comptroller is to waive any penalties and may charge interest no greater than 6.5% with respect to taxes paid as part of the settlement process. Id., § 1(d)-(e). In addition, the Comptroller is barred from assessing taxes for years prior to 1995, if the taxpayer pays all taxes due for years 1995 through 2003. Id., § 1(f).
Pertinent to your inquiry, Chapter 557 allows a corporation a choice in calculating the tax due for the period 1995 through 2003. In particular, it states:
 (1) A taxpayer may elect whether to have additional income tax calculated as though otherwise deductible payments were added back to the paying taxpayer's federal taxable income, or as though the receiving taxpayer were subject to the Maryland corporate income tax.
 (2) The Maryland income tax may not be imposed more than once for the same transaction.
Chapter 557, § 1(c). Thus, in circumstances similar to those in SYL, the taxpayer may elect to have additional income tax calculated either (1) by adding the royalty payments back to the parent corporation's taxable income, or (2) by retaining the royalty payments as deductions from the parent's income, but treating the subsidiary that received the payments as subject to the Maryland corporate income tax.
 II Analysis
You have asked whether a taxpayer that participates in the settlement process established by Chapter 557 has the option, in computing the tax owed for the settlement period, of making a different election for a subsidiary for each year of the settlement period. For example, a parent corporation might amend its 1995 return to add back previously claimed deductions for royalty and interest payments to a subsidiary, but retain the deductions in its 1996 return and have the subsidiary file a return and pay tax on royalty and interest income.
You have also asked whether a corporation that made payments to more than one subsidiary is required to make the same election for all subsidiaries. If separate elections are permitted for different subsidiaries, a parent corporation might deduct payments made to subsidiary X, but not payments made to subsidiary Y.
Your inquiry raises a question of statutory interpretation, in which the goal is to "identify and effectuate the legislative intent underlying the statute[s] at issue." Derry v. State, 358 Md. 325, 335, 748 A.2d 478
(2000). Under the principles of statutory construction, one begins with the words of the statute, because "plain statutory language is the best source of legislative intent and, when the language is clear and unambiguous, . . . [the] inquiry ordinarily ends there." Drew v. First Guaranty Mortgage Corp., 379 Md. 318, 327, 842 A.2d 1 (2003). Section 1(c) of Chapter 557 states that "a taxpayer may elect . . ." and states a choice that involves whether the "receiving taxpayer" — i.e., the subsidiary in circumstances similar to the SYL case — is treated as an entity that is itself subject to the Maryland income tax. The election allowed by § 1(c) essentially involves a determination of the status of the subsidiary as a taxpaying entity for purposes of resolution of tax liability. The absence of any reference to a year-by-year election suggests a single decision — and a single election — by the taxpayer for the entire period.
A second principle of statutory construction requires that the language of a statute "be construed reasonably with reference to the purpose, aim or policy of the enacting body." Derry v. State, 358 Md. at 336. The settlement process created by Chapter 557 is designed to resolve issues for a nine-year period (1995-2003); it does not permit a taxpayer to settle some years and contest others within that time period. This suggests that the General Assembly intended that a corporation availing itself of the settlement process would treat all years during the settlement period in a similar fashion in making this election.
The election permitted by § 1(c) of Chapter 557 is part of a special benefit related to a specific period of time. That special benefit reduces tax liability, limits interest, and eliminates penalties that the taxpayer would otherwise incur for that period. In many respects, it is similar to a credit, exemption, or deduction. Statutes that establish deductions or exemptions are strictly construed in favor of the taxing authority. Comptroller v. Crofton Co., 198 Md. 398, 404, 84 A.2d 86
(1951) ("to doubt is to deny the exemption"); Suburban Propane Gas Corp. v. Tawes, 205 Md. 83, 87, 106 A.2d 119 (1954) (an assertion that taxing power is relinquished must be "distinctly supported by clear and unambiguous legislative enactment"); see also Central Credit Union v. Comptroller, 243 Md. 175, 180, 220 A.2d 568 (1966); Pleasant Investments Ltd. Partnership v. Dept. of Assessments Taxation, 141 Md. App. 481,492, 786 A.2d 13 (2001). This principle of strict construction for deductions and exemptions has had long-standing application in federal tax law.[4] See INDOPCO, Inc. v. C.I.R., 503 U.S. 79, 84 (1992); Consolidated Chollar Gould Savage Mining Co. v. C.I.R., 133 F.2d 440
(9th Cir. 1943) (ambiguity arising from two possible and rational interpretations of deduction statute must be resolved against taxpayer). Thus, in this context, the absence of any provision allowing or indicating multiple elections supports the conclusion that only a single election is available.[5]
We have reviewed the legislative file, as well as the existing record of the legislative hearings and debates concerning Senate Bill 187 (2004), which ultimately became Chapter 557, and found no indication that the General Assembly intended to permit multiple elections under § 1(c). As originally introduced, Senate Bill 187 in effect would have codified the holding in SYL, and would have provided additional standards for adding back to a corporation's taxable income payments that the corporation made for interest and intangible expenses to a related entity. No special settlement period appeared in the original bill. The General Assembly ultimately passed the cross-filed version of that legislation, House Bill 297, with some amendments. See Chapter 556, Laws of Maryland 2004.
The settlement period was originally proposed as § 2 of Senate Bill 851 (2004). The text of that portion of Senate Bill 851, with minor modifications, was amended into Senate Bill 187 while the latter bill was under consideration by the Senate. Although Senate Bill 851 itself did not receive a hearing, the settlement period proposal was described by its advocates during the Senate hearing on Senate Bill 187. Witnesses at the hearing indicated that approximately 300 corporations could owe additional income tax as a result of the SYL decision, but that only a small number had accepted the terms of the Comptroller's existing settlement offer. The settlement period was presented as an inducement for many of those corporations to settle their tax liability for the 1995-2003 period in the near future, with the result that the State would realize substantial additional revenues in the coming fiscal year. Advocates for the settlement proposal identified the reduced interest rate and the waiver of penalties as the inducement. See Recorded Testimony of representatives of Price Waterhouse Coopers at hearing of Senate Budget and Taxation Committee concerning Senate Bill 187 (February 25, 2004) (emphasizing reduced interest rate); Fiscal and Policy Note (Revised) for Senate Bill 187 at p. 4 (specifying reduced interest rate and waived penalties as factors that could cause revenues to be realized more quickly). No mention was made of a shifting election as to the status of the tax-haven subsidiary.
The absence of any reference to multiple elections for a subsidiary in the statutory language or legislative history, coupled with the rule of strict construction accorded this type of legislation, leads to the conclusion that only a single election per "receiving taxpayer" is permitted.
This conclusion is also supported by the general rule of consistency in accounting methods used to compute tax liability. For example, with respect to the accrual method of accounting, federal tax regulations state that:
 No method of accounting is acceptable unless, in the opinion of the Commissioner [of Internal Revenue], it clearly reflects income. The method used by the taxpayer in determining when income is to be accounted for will generally be acceptable if it accords with generally accepted accounting principles, is consistently used by the taxpayer from year to year, and is consistent with the Income Tax Regulations;
26 C.F.R. § 1.446-1(c)(1)(ii)(C) (emphasis added); see also26 C.F.R. § 1.446-1(c)(1)(iv)(a) (a combination of accounting methods is acceptable if it clearly reflects income and is "consistently used");26 C.F.R. § 1.446-1(c)(2)(ii) (to clearly reflect income all items of gross profit and deduction must be "treated with consistency from year to year"). While a taxpayer has some freedom to change accounting methods, a change is normally made prospectively. See 26 U.S.C. § 446(e) (change in accounting method used by taxpayer to figure tax liability may require consent of Secretary of the Treasury); Evans v. Comptroller, 273 Md. 172,328 A.2d 272 (1974) (cash basis taxpayer could not change to accrual basis to avoid tax on income received after move to Maryland). This general principle of consistency in accounting method suggests that, absent clear evidence of legislative intent to allow multiple elections, the law should be construed to permit a single election concerning the status of a subsidiary for purposes of computation of tax liability.
In light of these principles, it is our view that the General Assembly contemplated that a taxpayer would make a single election for the settlement period with respect to a subsidiary. Thus, in computing the tax due for the settlement period, a parent corporation must choose for the entire period whether to eliminate deductions for royalty and interest payments and recompute the tax with respect to the parent corporation, or to maintain the deductions and have the subsidiary file returns and pay the additional tax.
This reasoning, however, does not compel the conclusion that a company that pays intangible income to two different subsidiaries must make the same election for both subsidiaries. As noted above, § 1(c) of Chapter 557 essentially requires an election concerning the status of the "receiving taxpayer" or subsidiary. Nothing in the language of the statute suggests that a corporation must choose the same status for different subsidiaries. The circumstances of different subsidiaries may be very different, quite apart from tax consequences that might motivate a corporation to make different elections for those subsidiaries. In our view, Chapter 557 does not require that a corporation make the same election for each subsidiary to which it has made payments.
 III Conclusion
For the reasons set forth above, it is our opinion that a corporation availing itself of the settlement process provided by Chapter 557 must elect, for the entire settlement period, to add back deductions for payments to a subsidiary or, alternatively, to have the subsidiary file a return and pay tax on the payments received. The corporation may make separate elections for each subsidiary to which it made payments.
 J. Joseph Curran, Jr. Attorney General
 John K. Barry Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
[1] See TG § 13-604.
[2] See TG § 13-701.
[3] Companion legislation sets forth standards for the deduction of interest and intangible expenses paid to a related entity and authorizes the Comptroller to apportion gross income and deductions among related entities using standards applied under § 482 of Internal Revenue Code for tax years beginning after December 31, 2003. Chapter 556, Laws of Maryland 2004.
[4] Interpretations of the federal income tax law govern interpretation of the Maryland income tax law, to the extent practicable. TG § 10-107.
[5] A countervailing principle is that tax statutes, as opposed to exemptions, are to be construed against the government and in favor of the taxpayer. See Comptroller v. Clyde's of Chevy Chase, Inc., 377 Md. 471,484, 833 A.2d 1014 (2003). Given that Chapter 557 creates a voluntary program in the nature of an exemption, that principle is not applicable. *Page 153