[Civ. No. 15437.   First Dist., Div. Two.   July 3, 1953.]

P. E. MARKEY, Respondent, v. DANVILLE WAREHOUSE AND LUMBER, INC. (a Corporation) et al., Appellants.

(1)

Carlson, Collins, Gordon & Bold, Robert Collins and Steven H. Welch, Jr., for Appellants

Roscoe D. Jones, John D. Martin and Roscoe D. Jones, Jr., for Respondent.

NOURSE, P. J.—This is an appeal from a judgment permanently enjoining defendants from the processing of cement or the preparation, processing, compounding, manufacturing et cetera of ready mix concrete or of any paving or building material or any other product or the erection, operation or maintenance of any building, structure, machinery or equipment for the use in any such activity on certain premises in the unincorporated town of Danville, county of Contra Costa, as violative of the zoning ordinance of the county of Contra Costa, as amended, and as a public nuisance and a private nuisance as to the plaintiff and ordering certain defendants, who now appeal, to permanently remove from said premises any such building, structure, machinery or equipment, stated in the injunction in more detail.

The injunction relates to a ready-mix or transit mix concrete plant. The erection of the plant was commenced in the summer of 1948 and the first delivery from it was made in September, 1948. Ownership and operation of the plant have presented some changes and complications but as all persons and companies involved were joined as defendants by stipulation and their distinction is of no importance for this appeal we need not state names and qualities in detail.

The operation of the plant involves the use of nearly four acres of land, bunkers, hoppers, chutes, elevator or conveyor systems with electro motors, a fleet of transit mixing trucks and semitractor trucks, and a truck repair shop, all of which is now owned and operated by appellants, the Humphreys, husband and wife, and/or their corporation. Large quantities of sand, aggregates and cement are brought to the plant by truck or railway car and dumped in an underground hopper, from which they are transported to elevated bunkers, the sand and gravel by a conveyor system of endless belts, the cement by an enclosed bucket operation. By means of weighing hoppers the materials are weighed in the proportions required for the manufacture of the concrete to be delivered and through spouts dropped into mixing trucks. With the addition of water the actual mixing takes place in the revolving drum of the mixing truck when this truck has been or is being loaded. The mixing process requires only some

minutes of revolving although further agitation may be required to keep the concrete plastic. Part of the mixing takes place during the driving on the premises. The mixing trucks are parked, cleaned and repaired on the premises.

On February 17, 1947, the Board of Supervisors of the County of Contra Costa adopted a zoning ordinance for the unincorporated area of said county, which ordinance took effect 30 days thereafter and thus was in effect when the concrete plant was erected. Under this ordinance and its later amendments the premises here involved are classified as "General Commercial." Section 4, subdivision D of the ordinance permits the following uses of property so classified: "Subsection 1. All of the uses permitted in single family residential districts, multiple family residential districts, retail business districts, transition residential agricultural districts, forestry recreation districts, together with such uses as are permitted by the provisions of this ordinance after the granting of land use permits for the special uses authorized to be granted in any of the said districts.

"Subsection 2. All types of wholesale business, warehouses, railroads, railroad terminals and stations and freight houses, and automobile and air freight terminals.

". . . . . . . . . . .

"Land use permits for the special uses enumerated in subsection 1 of this subdivision . . . may be granted after application therefor in accordance with the provisions of this ordinance."

None of the uses permitted in the districts enumerated in subsection 1, either with or without a land use permit includes the manufacture or processing of concrete. The manufacture or processing of cement, one of the component materials of concrete, is mentioned in section 4, subdivision J, subsection 2 of the ordinance as an example of a use permitted in a heavy industrial district. The trial court found that the operation of the concrete mixing plant was a heavy industrial use of the property, prohibited by the zoning ordinance.

Section 5 provides in part that any use of any land, building or structure contrary to the provisions of the ordinance is a public nuisance, to be abated in an action instituted on order of the board of supervisors, in addition to other available remedies.

Section 8 of the ordinance permits the continuation of a lawful use existing at the time the ordinance becomes effective though not conforming to the provisions of the ordinance.

At the time the ordinance became effective the business conducted on the premises was a wholesale business in hay, grain, feed, lumber and other building materials. Sand, gravel and cement were kept and stored at ground level in small quantities. No mixing of concrete for delivery took place on the premises. If mixing was required a hand mixer was sent to the site of the job. The trial court found that the cement mixing operations complained of were completely different from the small scale storage of materials carried on when the zoning ordinance went into effect and that prior to that time the property had never been subjected to any light or heavy industrial use:

The main contention of appellants, who do not attack the validity of any provision of the ordinance, is that the above findings are not supported by the evidence because no manufacture of concrete takes place at the new plant, but only the warehousing and selling of cement, aggregate and sand, permitted in section 4, subdivision D, subsection 2, *supra,* whereas the mixing, which constitutes the manufacture of concrete, takes place in the trucks in transit. The contention is without merit.

In construing a zoning ordinance the same rules are normally applicable as in construing statutes in general (*City of Yuba City* v. *Cherniavsky,* 117 Cal.App. 568, 571 [4 P.2d 299]) and accordingly a zoning ordinance must be construed reasonably considering the objects sought to be attained and the general structure of the ordinance as a whole (Yokley Zoning Law and Practice, p. 318; *Petros* v. *Superintendent & Inspector of Buildings,* 306 Mass. 368 [28 N.E.2d 233, 235]). The Contra Costa ordinance distinguishes light and heavy industrial use from general commercial use. It does not permit industrial use in a general commercial district, except that land use permits may be granted for lumberyards, cabinet shops and sheet metal shops (§ 4, subd. D, subsec. 1 together with subd. C, subsec. 2). The making of ready mixed or transient mixed concrete in its plastic state is manufacture (*Commonwealth* v. *McGrady-Rodgers Co.,* 316 Pa. 155 [174 A. 395, 396]), involving transformation—the fashioning of raw materials into a change of form for use—and as such is distinct from commerce (*Kidd* v. *Pearson,* 128 U.S. 1, 20 [9 S.Ct. 6, 32 L.Ed. 346]), but included in "industrial" in zoning ordinances. (*Murdock* v. *City of Norwood* (Ohio), 67 N.E.2d 867, 869.) There was in this case expert evidence that in the gen-

eral vicinity here involved concrete mixing plants are normally classified in zoning ordinances as belonging in light or heavy industrial areas and that also when the component materials of the concrete are delivered into mixing trucks the plant should be classified as an industrial concrete mixing plant because it makes dust and noise like any other concrete mixing plant. ■ In construing the ordinance in a reasonable and purposeful manner the trial court could hold that the whole process of elevating the materials, weighing and combining them in mixing trucks in the correct proportions and mixing them by means of said trucks constituted one integrated industrial manufacturing process and gave the plant an industrial character not permitted by the ordinance in a general commercial district although part of the mixing may have taken place when the trucks were in transit. The court was fully informed as to the factual character of the particular plant not only by the testimony of several witnesses but also by personal examination made and used as evidence by stipulation of the parties. His decision as to the character of the plant and its position under the ordinance will not be disturbed by us.

As against the trial court's decision appellants urge the following facts: In November, 1947, their predecessor applied for a land use permit for the sand and cement bunkers used in the present plant together with a land use permit for a lumber storage building on adjacent land zoned for retail business use; because the County Planning Commission felt that for storage buildings and bunkers in a commercial district a permit was not required this part was eliminated from the application and a land use permit granted by the board of supervisors as to the lumber storage building in the retail business district only. Thereafter building permits were granted by the County Building Inspector for the building of the concrete mixing plant after he had obtained a favorable opinion of a deputy district attorney and approval of the county planning commission.

Appellants fail to show how the above facts can avail them. ■ The ordinance gives the board of supervisors power to grant land use permits for enumerated purposes only among which a concrete mixing plant in a general commercial district is not included. The board has then no power to grant such permit until the ordinance is amended through proper legislative procedure. (*Johnston* v. *Board of Supervisors*, 31 Cal.2d 66, 74 [187 P.2d 686].) Even an express permit granted by the board contrary to the terms of the

ordinance would be of no effect (*Johnston* v. *Board of Supervisors, supra*; *Magruder* v. *City of Redwood,* 203 Cal. 665, 674-675 [265 P.2d 806]). Not only was there no amendment of the ordinance but the application is without any importance for the matter before us because neither its terms nor the plan accompanying it show. in any way the different industrial use intended to be made of the premises. ■ This new use was known when the building permit was granted, but the acts of the administrative and legal functionaries involved can certainly no more influence the force of the ordinance or cause a vested right in appellants or an estoppel than an invalid permit of the board of supervisors itself. (*Lima* v. *Woodruff,* 107 Cal.App. 285, 287 [290 P. 480] ; *In re Application of Ruppe,* 80 Cal.App. 629, 637 [252 P. 746] ; *Maguire* v. *Reardon,* 41 Cal.App. 596, 601-602 [183 P. 303] ; Annos. 119 A.L.R. 1509 ; 6 A.L.R.2d 960.)

■ Appellants contend that it was error to hold the concrete mixing plant to be a public and a private nuisance without evidence of the employment of unnecessary and injurious methods of operation, relying on section 731a of the Code of Civil Procedure. Section 731a applies only to eliminate injunctive relief where a business is operated in its appropriate zoning district (in which the use is "expressly permitted") and causes injury and nuisance although operated in a careful and efficient manner (*Gelfand* v. *O'Haver,* 33 Cal.2d 218, 220 [200 P.2d 790]). As here the appellants are operating an industrial plant in a general commercial district where such use is not permitted, the section has no application. The transcript is replete with evidence as to dust and grit from the plant pervading .the homes of the residents of Danville and of loud noises of motors, trucks, falling gravel, pounding with hammers and late operation disturbing them, which fully support, apart from section 5 of the zoning ordinance, *supra,* the findings of a nuisance as to the public in general and as to plaintiff, an owner of and resident on property contiguous to the plant, privately.

■ The final contention that the operation of the plant is as a matter of law a nonconforming use permitted by section 8 of the ordinance is evidently without merit as an industrial use has taken the place of the mere storage use in existence when the ordinance took effect.

Judgment affirmed.

Goodell, J., and Dooling, J., concurred.