CONNECTICUT SAND AND STONE CORPORATION *v.*
ZONING BOARD OF APPEALS OF THE TOWN
OF AVON

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued March 6—decided April 2, 1963

*Valentine J. Sacco,* for the appellant (plaintiff).

*Reginald E. Francklyn,* with whom, on the brief was *Colin C. Tait,* for the appellee (defendant).

SHEA, J.  In October, 1957, when the Avon zoning regulations applicable to this case became effective, the plaintiff occupied, as lessee, certain land on Edwards Road.  On this land, the plaintiff was excavating and extracting sand and gravel, which was screened, washed and processed for sale.  The land was zoned "I.1 Industrial," a zone in which such sand and gravel operations were not permitted.  Avon Zoning Regs. § 4.11 (1957).  Section 6.01 of the regulations, however, allowed the continuance of the plaintiff's use as a nonconforming one.  In November, 1959, the plaintiff erected on the land two elevated bins, one of which is used for cement and the other for sand and stone.  No building permit was obtained for the erection of these bins.  Materials from the bins are loaded into ready-mix concrete trucks; water is then added and all of the aggregates are mixed to produce concrete for sale and delivery to customers.  The mixing process usually takes place while the trucks are en route to, or at, their destination.  In August, 1960, the town building inspector, as the enforcement officer, caused to be served on the plaintiff a cease and desist order relating to the use of the property for the batching and sale of ready-mix concrete and ordered the removal of the bins.  From these orders the plaintiff appealed to the zoning board of

appeals, which sustained the action of the building inspector. The plaintiff's appeal from the decision of the board to the Court of Common Pleas was dismissed, and from that judgment the plaintiff has appealed to this court.

The plaintiff claims that its operations in producing ready-mix concrete are a permitted use in an I.1 industrial zone. The uses permitted in such a zone are specified in detail in the regulations. The plaintiff argues that its present use of the premises is authorized in particular by § 4.11.02 of the regulations. That section permits the use of land for "Building Materials Sales Yard and Storage Building." Phrased in another way, the section permits the use of land for a structure to store building materials and as a yard for the sale of such materials. It does not authorize the use of land for the manufacturing, production or processing of building materials, that is, for operations such as those which are being carried on by the plaintiff. Nor can it be said that these operations are included in any of the other uses specifically permitted in an I.1 industrial zone. This interpretation is fortified by reference to the next succeeding section of the regulations. Section 4.12, relating to special uses, provides that "trucking terminals and industrial uses of land or buildings for manufacturing, processing, fabrication, assembly or similar uses" may be authorized by the zoning commission as a special use, after a public hearing, subject to certain limitations set forth in §§ 4.12.01 to 4.12.10 inclusive. The regulations must be construed as a whole and in such a manner as to reconcile all their provisions so far as possible. *Hutchison* v. *Board of Zoning Appeals,* 140 Conn. 381, 385, 100 A.2d 839. It is clear that the uses permitted in an industrial zone, and par-

ticularly those enumerated in § 4.11.02, do not, when considered and construed in the light of the provisions of § 4.12, authorize the plaintiff to conduct the operations now carried on by it. Boards of appeal are necessarily entrusted with the function of deciding, within prescribed limits and consistent with the exercise of a legal discretion, whether a regulation applies to a given situation, and the manner of its application. *Stern* v. *Zoning Board of Appeals,* 140 Conn. 241, 245, 99 A.2d 130; *Pascale* v. *Board of Zoning Appeals,* 150 Conn. 113, 116, 186 A.2d 377. In discharging this responsibility, a board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. *Florentine* v. *Darien,* 142 Conn. 415, 426, 115 A.2d 328. We cannot say that the action of the board in this case was contrary to law.

The plaintiff has argued in the alternative that, if its use of the premises is not permitted in the zone, the use is allowed as a nonconforming use. It is true that § 6.01 allows the continuance of a nonconforming use if the use existed at the time of the adoption of the regulations. It is also true that no nonconforming use shall be extended. or expanded. § 6.01.03. The latter provision is consistent with the general principle that nonconforming uses should be abolished or reduced to conformity as speedily as the fair interest of the parties will permit, and in no case should be allowed to increase. *Salerni* v. *Scheuy,* 140 Conn. 566, 570, 102 A.2d 528; *Guilford* v. *Landon,* 146 Conn. 178, 182, 148 A.2d 551. A mere increase in the volume of business done pursuant to a nonconforming use would not be considered an unlawful extension of that use. *Guilford* v. *Landon,* supra, 183; *Salerni*

v. *Scheuy,* supra, 571. The plaintiff has attempted to invoke the rule that the employment of improved and more efficient instrumentalities in the pursuit of the original use is not an unlawful expansion of that use. See *DeFelice* v. *Zoning Board of Appeals,* 130 Conn. 156, 162, 32 A.2d 635. This principle is subject to the requirement that the new method be one that is ordinarily and reasonably adapted to make the original use available to the owner and that the original nature and purpose of the undertaking remain unchanged. Here, the plaintiff claims that the new method is nothing more than a technical improvement by reason of the introduction of new instrumentalities which are designed to modernize its operations and increase their efficiency. This claim is unsupported by the facts. To its former business, the plaintiff has added a new undertaking. It is now engaged in the business of manufacturing ready-mix concrete for sale. *Friday* v. *Hall & Kaul Co.,* 216 U.S. 449, 455, 30 S. Ct. 261, 54 L. Ed. 562; *Commonwealth* v. *McCrady-Rodgers Co.,* 316 Pa. 155, 159, 174 A. 395; *Markey* v. *Danville Warehouse & Lumber, Inc.,* 119 Cal. App. 2d 1, 5, 259 P.2d 19. This is a marked departure from the original nature and purpose of the nonconforming use of operating a sand and gravel plant. The manufacture of concrete constitutes an extension or expansion of the nonconforming use and therefore is in violation of § 6.01.03 of the regulations. *Guilford* v. *Landon,* supra; *DeFelice* v. *Zoning Board of Appeals,* supra; *Seekonk* v. *Anthony,* 339 Mass. 49, 54, 157 N.E.2d 651; *Mignatti Appeal,* 403 Pa. 144, 146, 168 A.2d 567; *Markey* v. *Danville Warehouse & Lumber, Inc.,* supra.

The building code of Avon provides that no building or structure shall be constructed or altered

without a permit. Avon Bldg. Code § 100-6 (1956). The bins erected by the plaintiff clearly fall within the meaning of a "structure" as defined in § 101 of the code. They should not have been erected without a permit. The plaintiff did not apply for a permit, and none could have been issued until the building inspector certified that the proposed structure complied with all of the provisions of the zoning regulations. Avon Zoning Regs. § 7.02.01 (1957). The bins were erected in violation of the regulations, and the building inspector was authorized to issue the orders which he caused to be served on the plaintiff in August, 1960. General Statutes § 8-12; Avon Zoning Regs. § 7.01 (1957).

There is no error.

In this opinion the other judges concurred.