[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Before the court is an appeal of a decision by the defendant CT Page 4814 Zoning Board of Appeals of the Watertown Fire District, which decision, following a public hearing, upheld action of its zoning enforcement officer in granting a foundation permit in connection with proposed construction of a residential building. The property on which development is proposed is designated as Lot #6A and is located on North Street within the District. The plaintiff-appellants are abutting property owners or, in one instance, the owner of property across the street and within 100 feet of the subject lot.
It is the court's finding that the plaintiffs, who filed a timely appeal, are clearly aggrieved by the decision. Section8-8, Connecticut General Statutes; Smith v. Planning Zoning Board, 3 Conn. App. 550, 552-53 (1985).
Additional defendants to the action are the record owners of the property and the permit applicant who holds a contract with the owners for acquisition of title to the lot.
The current owners of Lot #6A are Arliss L. and Anna M. Land who acquired title February 1, 1966, by Administrator's Deed of the Estate of Josephine Schlitter. The deed conveyed title not only to Lot #6A, but also to what is designated by the Watertown Assessor as Lot #6, also known as the Litchfield Road lot. On July 8, 1971, the Lands conveyed title to Lot #6 to Raymond J. and Elizabeth E. Hatstat, retaining title to Lot #6A.
At the time of the 1971 conveyance to Hatstat, the 1947 zoning ordinance then in effect placed Lot 6A in an "A" Residence Zone. Under the ordinance the minimum required lot area was 6,000 square feet and minimum lot width was 75 feet. Lot 6A, having an CT Page 4815 area of 6,238 square feet and a width of 50 feet, therefore exceeded the area requirement but fell short of the requirement regarding width.
Applicable to limitations such as that of Lot #6A above described was Section 10E of the 1947 ordinance which provided as follows:
 "10E. Any plot existing as a separate parcel at the time of the passage of these regulations and not complying with the minimum area or width of lot required in the schedule may, notwithstanding such fact, be improved with a building in accordance with the regulations of its Residence Zone, provided the owner owns no adjacent land which may, without undue hardship to him, be included as part of the plot in question."
In 1973, almost two years after conveyance of the Litchfield Road lot to the Hatstats, the District adopted new zoning regulations. The new regulations, which continue in effect, placed Lot #6A in a Residence R-10F Zone. The minimum lot area in such zone is 10,000 square feet with a width of at least 50 feet.
Although the Land's lot clearly failed to meet the minimum area requirement of the new regulations, the defendants argue that the lot falls within the non-conforming use language of Section 6-11 which reads as follows:
 "6.11 Lots: A parcel of land, which fails to meet the area, shape or frontage or any other applicable requirements of these Regulations pertaining to lots, may be used as a lot, and a building or other structure may be constructed, reconstructed, enlarged, extended, moved or structurally altered thereon, provided that all of the following requirements are met:
 6.11.1 The use, building or other structure shall conform to all other requirements of these Regulations;
6.11.2 If used for a dwelling, the lot CT Page 4816 shall contain a minimum area of 4,000 square feet; and
 6.11.3 If the parcel fails to meet the area requirements of these Regulations, the owner of the parcel shall not also be the owner of contiguous land which in combination with such parcel that fails to conform would make a parcel that conforms or more nearly conforms to the area requirements of these Regulations pertaining to lots."
The language is applicable, it is claimed, because the owners do not also own contiguous land.
Following a discussion by the members at a special meeting which was open to the public, the Board rejected by a 3 to 2 vote the appellants' claim that pursuant to the regulations, the zoning officer should not have granted the foundation permit. A vote of at least four members of the Board was required to reverse the officer's action.
The main thrust of the plaintiffs' appeal is their claim that the Board erred in refusing to find that there had been for a long period of time a merger of Lots #6 and 6A into one piece. The merger, it is argued, arises by deed, by usage, and by operation of law. The claim is also made that Lot 6A had been for a long time officially designated by the District as non-buildable.
The parties agree if there was a merger of the two lots, it occurred prior to enactment of the 1973 regulations, at a time when the 1947 regulations were in effect.
A zoning board of appeals is essentially an appellate panel which acts in a quasi-judicial capacity. Burr v. Rago, 120 Conn. 287,292 (1935); Root v. Zoning Board of Appeals, 41 Conn. Sup. 218,220 (1989). Its decisions "are to be overruled only when it is found that [it has] not acted fairly, with proper motives, or upon valid reasons." Longo v. Board of Zoning Appeals, 143 Conn. 395,398-99 (1956). "Where it appears that an honest judgment has been reasonably and fairly exercised after a full hearing, courts should be cautious about disturbing the decision of the local authority;" Kutcher v. Town Planning Commission, 138 Conn. 705,710 (1952); and should recognize the liberal discretion with which the authority is vested. Devaney v. Board of Zoning Appeals,143 Conn. 322, 326 (1956). It follows that the burden of overthrowing a decision of a zoning board of appeals rests squarely upon the CT Page 4817 plaintiffs. McMahon v. Board of Zoning Appeals, 140 Conn. 433,438 (1953).
"Under many zoning ordinances, where a lot became substandard by virtue of the passage of more restricted zoning regulations, and where that lot was at the time of the passage of that legislation under common ownership with that of an adjacent lot, [the doctrine of merger applies, and] such zoning regulations have refused to continue to recognize the separate validity of the lot." Neuman v. Zoning Board of Appeals, 14 Conn. App. 55, 60
(1988).
Apart from the question whether there had been a prior merger, at the time of adoption of the 1973 regulations Lot 6A was separately owned from any contiguous land and not the requirements of Section 6.11 of the ordinance, thereby permitting its development as a building lot. While the situation was different at the time of enactment of the 1947 regulations in that Lots 6A and 6 were commonly owned and Lot 6A did not meet the lot width requirement, whether a merger was effected is largely dependent on the intent of the owner. "An owner of contiguous parcels of land may merge those parcels to form one tract if he desires to do so. . . . Intent is [of course] a question of fact." Molic v. Zoning Board of Appeals, 18 Conn. App. 159, 164 (1989).
The Lands have continuously owned Lot 6A without ownership of any adjacent property since 1971. That they considered it to be a separate building lot even earlier is evidenced by their effort in July 1967 to obtain a building permit and by their 1971 conveyance of the Litchfield Road lot which had never been used in conjunction with Lot 6A. Members of the Board, who viewed the lots, may well have concluded, as claimed, that the topography and higher elevation of Lot 6 precluded joint development of the two lots. In any event, there is little to support a conclusion that the owners desired or intended a merger.
The record also reflects that Lot 6A has been assessed and taxed as a separate house lot, and that both lots were, with one exception, separately described in deeds of conveyance dating back to 1923. Only a 1966 administrator's deed contained a combined description.
No formal application to develop Lot 6A had previously been submitted to, or considered by, the District, and the Board was justified in rejecting, or finding as uncontrolling, informal past letters of opinion suggesting that Lot 6A was non-buildable. Likewise, the Board's refusal to attach significance to a 1923 septic restriction as evidencing use of Lot 6A in conjunction with other land makes sense in light of the introduction in the 1930's of sanitary sewers to serve the area. CT Page 4818
"Zoning boards of appeal are entrusted with the function of deciding, within prescribed limits and consistent with the exercise of a legal discretion, whether a regulation applies to a given situation and the manner of its application. Connecticut Sand Stone Corporation v. Zoning Board of Appeals, 150 Conn. 439,442, 190 A.2d 594 (1963). In discharging this responsibility, a board is endowed with a liberal discretion and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary, or illegal. Id." Molic v. Zoning Board of Appeals, supra, 165. "Subject to certain underlying principles, the solution of zoning questions is to be left to the zoning authority, and the courts cannot substitute their judgment for the liberal discretion enjoyed by zoning authorities." Rogers v. Zoning Board of Appeals, 154 Conn. 484,488 (1967).
For all of the reasons above stated, the court resolves the issues in favor of the defendants, and the plaintiffs' appeal is dismissed.
GAFFNEY, JUDGE
CT Page 4819