# STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Environmental Division Unit | ENVIRONMENTAL DIVISION<br>Docket No. 154-12-15 Vtec |

| | |
|---|---|
| Old Lantern Non-Conforming Use | |

## Decision on Pending Motions

This matter began with a complaint, lodged with the Town of Charlotte Zoning Administrator (Zoning Administrator") by Appellants here—Alison and Adrian Wolverton ("Appellants")—who alleged that certain improvements and expansions had been made to an event facility in the Town of Charlotte ("Town") known as the Old Lantern Inn. Appellants sought in their initial complaint to have the Zoning Administrator conclude that the Old Lantern Inn should not be regarded as a pre-existing, nonconforming use, and that as a consequence, the Inn owners should be required to seek and secure applicable zoning approvals for its continued operation.

When the Zoning Administrator declined to adopt Appellants' allegations, they appealed her determinations to the Town of Charlotte Zoning Board of Adjustment ("ZBA"). When the ZBA affirmed the Zoning Administrator's determinations, Appellants filed a timely appeal with this Court.

Appellants are represented in this appeal by James A. Dumont, Esq. The Old Lantern Inn, together with its owners, Lisa and Roland Gaujac (hereinafter collectively referred to as "Old Lantern"), are represented by Liam L. Murphy, Esq. The Town is represented in this appeal by David W. Rugh, Esq. Neighbors Michael Frost, Karen Frost, Maura Wygmans, and Justin Wygmans also appear as Interested Persons and are representing themselves.

Several motions have become ripe for the Court's consideration. First, on May 26, 2017, the Court issued three separate Entry Orders to address separate motions for sanctions, a motion

-1-

to strike certain filings, and a motion for permission to make further filings. This Decision is issued to address the remaining motions that are ripe for the Court's consideration.[1]

Appellants have filed a motion requesting that the Court enter summary judgment in their favor on Questions 2 and 3 from the Statement of Questions they filed on June 2, 2016. Appellants filed a second summary judgment motion concerning their Question 8, which included an alternate request that they be allowed to revise that Question for purposes of clarification. Old Lantern filed its own motion requesting that Appellants' Questions 1, 4, 5, 6, and 7 be dismissed and that the remaining Questions (Questions 2, 3, and 8) be limited in scope. Each moving party filed a responsive memorandum to the other party's motion. The Town and the Interested Parties chose not to participate in the discussion of these pending motions.

We address all three motions below.

First, we note that the parties assert that several material facts are disputed. But our analysis reveals that the parties' disputes are mostly focused on the legal issues that determine what facts are material. Further, we note that when considering cross motions for summary judgment, particularly when disputed facts are presented, we are directed to view each set of facts in a light most favorable to the non-moving party as we consider each pending motion. In re Beliveau NOV, 2013 VT 41, ¶ 7, 194 Vt. 1 ("When both parties move for summary judgment, each is entitled to the benefit of all reasonable doubts and inferences when the opposing party's motion is being judged." (quoting City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332)).

We review the material facts, disputed and undisputed, in this light.

**Factual Background**

1.     The Old Lantern Inn and surrounding lands began operating sometime in the 1950s as a large camping area. The large barn now known as the Old Lantern Inn has been continuously

---

[1] Since the Court issued its May 26, 2017 Entry Orders, the parties have filed additional motions. The Court addresses those most recently-filed motions in separate Entry Orders.

used as an event facility where meals for campers were provided, as well as concerts, weddings, community events, auctions, and other activities.[2]

2.      The parties appear to agree that the Town first adopted zoning in the mid-1960s, although we have not been provided with a specific enactment date. If this general representation is proved true at trial, and if the representation that events began and then continued at the Old Lantern facility since the 1950s, we would conclude that the event facility use pre-dates Town zoning.

3.      The Old Lantern Inn lies in the West Charlotte Village Zoning District ("WCV District").

4.      Meals have been prepared in a kitchen inside the Old Lantern Inn and served to the campers and those attending the other events at the Inn. Sometimes, the meals served at Old Lantern events have been prepared off site.

5.      One family, the Burns family, operated the Old Lantern property from the 1950s until sometime just prior to the year 2000, when they sold the Old Lantern property to Mr. Dickerson and his business partners. During the Burns Family's ownership, some of the land was sold off[3] and the camping operation ceased. But the Burns family continued to operate the Old Lantern Inn as an events facility. Most events occurred during the months of May through October, although the Burns family also had occasional events during the non-peak months. During the peak months, there were two to three events per weekend.

6.      Mr. Dickerson and his business partners continued to operate the Old Lantern Inn from the year 2000 forward as an events facility, with a variety of events throughout the year, on a schedule similar to that conducted by the Burns family.

---

[2] These and related facts are gleaned from the Affidavit of James Dickerson, an auctioneer at the property for about twenty years, beginning in the 1980s; Mr. Dickerson and his business partners thereafter purchased the Old Lantern property and operated it as an events facility from sometime in 2000 until 2006, when he and his partners sold it to Mr. & Mrs. Gaujac, the current owners of the Inn.

While Appellants contest some of these facts, particularly concerning the consistent operation of the Inn as an event facility, they provide no first-hand sworn statements to contradict Mr. Dickerson's sworn statement. We therefore regard Mr. Dickerson's sworn statement as uncontested. See V.R.C.P. 56(c)(4) ("An affidavit used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.")

[3] In fact, it has been represented that two parties to this appeal—Maura and Justin Wygmans—in 2005 purchased the property in which they now reside from the former owners of the Old Lantern Inn.

7. Sometime around the beginning of 2006, Mr. Dickerson and his partners decided to sell the Old Lantern Inn because one of his partners became ill. While the property was being marketed, the partners continued to host events at the Inn, although the number of events was temporarily reduced. In 2006, these partners then sold the Old Lantern Inn to the current owners: Lisa and Roland Gaujac. The Gaujacs closed on their purchase of the property, got up to speed on the operation of the business and made certain improvements. After their purchase, the Gaujacs have continuously operated the Inn as an events facility.

8. It seems that there is some dispute regarding the question of how many events have occurred during the Gaujacs' ownership, because the Gaujacs claim the number has stayed the same, while the Appellants allege that the number has increased. However, while the Gaujacs presented evidence in the form of sworn statements by Mrs. Gaujac and Mr. Dickinson, based on firsthand knowledge, that the number of events has remained constant, Appellants failed to provide any credible evidence of an increase.[4]

9. The parties dispute whether the events, particularly weddings, have become more "intense." Appellants assert that the intensity of the events has increased because they have been moved onto the western lawn area, because noise levels have increased, and because there are more guests. They also appear to make general references to more guests at some events and an increased numbers of events, but no sworn statement offered by Appellants provides specific numbers of guests or events.

10. The parties dispute the historical use of the west lawn for weddings, concerts, and other events, and whether those historical events employed amplification systems. Old Lantern asserts that the west lawn has historically been used for events and that sound amplification systems have historically been used. Appellants assert that the use of the west lawn and amplification

---

[4] Appellants' attorney refers to an estimated increase in the number of events that have occurred during the Gaujacs' ownership, based upon argument offered by Attorney Murphy during presentations before the Town of Charlotte Planning Commission (our record here does not reveal that Attorney Murphy was sworn in or offered his statements as a witness). Appellants' attorney also appears to offer calculations of a significant percentage increase in the number of events held during the Gaujacs' ownership, although these percentage calculations, and any specific figures they may have been based upon, do not appear in any of the sworn statements presented to the Court.

systems generally began in recent years, although Appellants do not offer specifics on when this alleged new activity began.

11.    The affidavits offered by Old Lantern provide first-hand knowledge that the west lawn for weddings and other functions has historically been used during weddings and other events. There were once two adjoining doors and stairs that traversed the three-foot drop from the door threshold to the west lawn immediately adjacent to the barn. However, those steps were removed at some point before the Gaujacs' purchase. During that time, event guests would use another door on the barn to access the west lawn.

12.    Sometime in 2008, the Gaujacs replaced the doors on the western barn wall with a set of French doors with opposing hinges to provide a single wide access. An undated photo marked as Appellants' Exhibit F shows the French doors and five steps between the doors and the ground that were installed in 2008 on the west side of the Old Lantern barn.[5]

13.    At some time prior to this case being filed, the Gaujacs renovated the kitchen at the Old Lantern barn. While the record before us is unclear, it appears that a neighbor complained sometime in the Spring of 2008 to the Zoning Administrator about the new French doors and stairs added to the western side of the Old Lantern barn. In response, on April 21, 2008, the Zoning Administrator wrote a letter to Mr. and Mrs. Gaujac, asking the Gaujacs to respond to a claim (presumably by the neighbor) that the new doors and stairs "suggest a change or enlargement in the approved use of the building and property." See Zoning Administrator's April 21, 2008 letter, a copy of which has been filed as Appellants' Exhibit D.

14.    Mrs. Gaujac represents in her sworn statement that she and Mr. Gaujac invited the Zoning Administrator onto their property and "showed him that the [new French] doors were merely replacements of the pre-existing doors [on the west wall of the barn] and the steps were obviously replacements of steps that had been removed previously, as there was a three-foot drop from the door[s] to the ground of the West Lawn. As a result, [the Zoning Administrator]

---

[5] Attorney Dumont referred to these stairs as a "stairwell" in his pleadings. We do not perceive the five un-enclosed stairs that traverse the three-foot drop to the west lawn as a stairwell, since that term is defined as "a vertical shaft in which stairs are located." Merriam-Webster's Collegiate Dictionary, 10th Ed. (2000). The Zoning Administrator also uses the term "stairwell" in his April 21, 2008 correspondence to Mr. & Mrs. Gaujac (Exhibit D), based upon complaints from a neighbor. No affidavit offered by Appellants uses the term "stairwell." We conclude that the five open stairs leading to the west lawn do not fit the definition of "stairwell."

assured us that no permit was necessary." See Affidavit of Lisa Gaujac dated February 9, 2017, filed in support of Old Lantern's Opposition Memorandum.

15.     No evidence has been submitted to contradict Mrs. Gaujac's representations concerning these doors and steps, or the Zoning Administrator's response. There also has been no evidence submitted that any zoning administrator has provided notice of an alleged zoning violation concerning the Old Lantern Inn since the 2008 allegations were presented.

16.     On August 4, 2015, Maura O'Dea Wygman and Karen Frost, together with their then attorney, Michael Harris, and the Town's Attorney, David Rugh, met with the Zoning Administrator to present a series of allegations against the Old Lantern Inn and its owners. Based on a sworn statement by Appellant Maura O'Dea Wygman, the allegations included::

   a. "the intensity or frequency of use [at the Old Lantern Inn] had changed" and

   b. "the addition of the new doors and stairway on the west side of the building had led to [a] changed use of that part of the property, including the yard on the west side of the building."

Wygman Affidavit, dated January 4, 2017, at ¶ 7.

17.     A letter by the Zoning Administrator (detailed in ¶¶ 18–19, below) indicates that Appellants also alleged that "recent" renovations to the kitchen, with a resulting increase in meals prepared on site, led to an unlawful expansion of the use of the Old Lantern Inn. No party has provided a specific date for when these kitchen renovations occurred.

18.     The Zoning Administrator responded to the August 2015 allegations against the Old Lantern Inn in a September 11, 2015 letter. The letter advises that the Old Lantern barn "has historically been used as an event/banquet facility and is considered a pre-existing, nonconforming use in the West Charlotte Village Zoning District." Id. at 1. The Administrator focused exclusively upon "[q]uestions . . . raised recently regarding the scope of recent kitchen renovations and an apparent change in the facility's operations from preparation of meals by caterers to on-site meal preparation . . .." Id.

19.     The letter goes on to advise that the Zoning Administrator confirmed with state officials that the current operation of the Inn did not constitute changes that required amendments to the Inn's existing state Department of Health, wastewater, or water supply permits. The letter concludes: "Based on this information, I do not believe the facility's recent kitchen renovation

and the shift to preparation of food on-site constitute an alteration or expansion of the Old Lantern barn and event facility's pre-existing nonconforming use." Id. at 2.

20. Old Lantern disputes the basis of the allegations presented to the Zoning Administrator in 2015. Specifically, via Mrs. Gaujac's February 9, 2017 Affidavit, Old Lantern presents sworn statements that the French doors and three-foot-drop steps were not exclusively new, but rather replacements for pre-existing doors in the same location on the barn's western wall and that the new steps merely replaced steps that were once in the same location, but had been previously removed. Id. at ¶¶ 13–15.

21. Mrs. Gaujac also offered an explanation for the kitchen renovation, stating in her affidavit that, in "response to a request by the Department of Health, we renovated our kitchen, but did not increase its size or capacity. We replaced the old stove, replaced the existing sink with a code compliant 3 bowl sink, and replaced the hooded vent system." Id. at ¶ 17. Appellants do not dispute these factual representations.

22. Appellants thereafter appealed the Zoning Administrator's adverse determinations to the ZBA. In their Notice of Appeal to the ZBA, Appellants stated the following requests:

> **Relief Requested**: Appellants request that the Town of Charlotte Zoning Board of Adjustment reverse the Zoning Administrator's (ZA) determination that the on-site food preparation in the new commercial kitchen operation at the Old Lantern Barn, and related activities, does not constitute a change and/or alteration in the facility's pre-existing non-conforming use that would cause the property to be subject to the CLUR[6] conditional use regulations. Appellants ask that the ZBA direct the ZA to require the property owners shall seek [sic] and obtain a conditional use permit in order to continue their present operations.

Appellants' Notice of Appeal to the ZBA, dated September 24, 2015, a copy of which was attached as Ex. A to Old Lantern's Statement of Disputed Facts, filed February 9, 2017.

23. Appellants' Notice of Appeal provides greater detail about the grounds for their requested relief that reference (A) the kitchen renovations; (B) an allegation that, with the renovated kitchen and on-site meals preparation, the Inn had become a public restaurant; (C) allegations that the noise levels at Old Lantern events has materially increased, such that its operation should be governed by the Town's performance standards; and (D) that the Old

---

6 The Town of Charlotte Land Use Regulations.

Lantern lost its grandfathered status as a pre-existing, nonconforming use because it ceased operation in 2006 for a period of greater than six months.[7] Id.

24.     The ZBA heard Appellants' appeal on November 4, 2015 and issued a written decision on December 4, 2015, upholding the Zoning Administrator's determination concerning on-site meal preparations in the renovated kitchen.[8]  The ZBA also concluded that, as operated, the Old Lantern does not constitute a restaurant use as that term is defined in the Regulations, and that the Old Lantern Inn has not ceased operation for a period of six month or more and had therefore not abandoned its pre-existing, nonconforming use status.  Id. at 4–5.

25.     The ZBA specifically declined to address the other allegations that Appellants presented at the November 4, 2015 hearing concerning "issues of sounds, frequency [of] events, and alleged unpermitted improvements at the Old Lantern . . . [because those allegations] were not included in the Zoning Administrator's Opinion, and are outside of the scope of this appeal." Id. at 5.

26.     Appellants thereafter filed a timely appeal from the ZBA 's decision with this Court.  On June 2, 2016, Appellants filed their Statement of Questions, listing eight Questions in which various legal issues are presented.

## Discussion

At its core, the matter presented concerns the complaint by Appellants that the Old Lantern is currently operating in a manner that exceeds its pre-existing, nonconforming use status.  We therefore begin our analysis with a summary of why protections are afforded to uses that, while once conforming or pre-dating zoning regulations, do not conform to the existing land use regulations.

I.     **Preliminary Issue: Pre-Existing, Nonconforming Uses and De Novo Review.**

The parties appear to agree on at least one legal premise: that the manner in which the Old Lantern Inn is currently operating does not conform to the applicable provisions of the Town of Charlotte Land Use Regulations ("Regulations").  This conclusion is somewhat easily reached,

---

[7] Old Lantern disputes these claims in the Affidavits filed by Mrs. Gaujac and Mr. Dickerson.

[8] A copy of the ZBA's December 4, 2015 Decision was filed with this Court on December 31, 2016 as an attachment to Appellants' Notice of Appeal.  We therefore regard that copy of the ZBA Decision to be part of the record in this appeal.

since the current Regulations do not list an events facility as a permitted use in the WCV District. See Regulations Table 2.1(C) and (B) (listing the permitted uses and uses allowed by right in the WCV District). While the Old Lantern uses may be categorized as a conditional use within the District, such a use may only be lawful after it receives conditional use approval, absent a pre-existing, nonconforming status.

The Regulations include a recognition of the allowance of pre-existing land uses that do not conform with the existing Regulations:

> (A) **Nonconforming Use**. Any use of land or use of a structure legally in existence as of the effective date of these regulations which does not comply with the requirements of these regulations, as adopted or as subsequently amended, shall be considered a nonconforming use. A nonconforming use may be continued indefinitely in accordance with the Act [§4412(7)[9]], subject to the following limitations. A nonconforming use:
>
> (1) may not be moved or altered except with the approval of the Board of Adjustment in association with conditional use review under Section 5.4;
>
> (2) shall not be changed to another nonconforming use without approval under conditional use review under Section 5.4, and a determination by the Board of Adjustment that the proposed nonconforming use is of the same or a more restricted nature as the existing nonconforming use;
>
> (3) shall not be re-established if such use has been changed to, or replaced by, a conforming use, or if such use has been discontinued for a period of six (6) months, regardless of the intent to resume the prior use;
>
> (4) shall not be reestablished following abandonment or discontinuance resulting from structural damage from any cause, unless the nonconforming use is carried on uninterrupted in the undamaged part of the structure, or the use is reinstated within one (1) year of such damage. The Board of Adjustment may, on appeal, grant a one (1) year extension to reestablish the nonconforming use for situations it determines are beyond the applicant's control.

Regulations § 3.8(A).

To explain why nonconforming uses are allowed to exist, we first acknowledge the established purpose of zoning. These two land use doctrines appear to contradict each other,

---

[9] See 24 V.S.A. § 4412(7), which directs that all municipal land use regulations must "define how nonconformities will be addressed . . .." Id. That statutory provision details the manner in which a municipality may regulate nonconformities, including the authorization that municipalities may "regulate and prohibit expansion and undue perpetuation of nonconformities." Id. We note that the Regulations do not specifically reference how "expansions" of nonconforming uses are regulated in Town.

since a prime purpose of zoning is to bring about the orderly physical development of the community by confining particular uses to defined areas. DeWitt v. Brattleboro Zoning Board of Adjustment, 128 Vt. 313, 319 (1970) (quoting Hay v. Bd. of Adjustment of the Borough of Fort Lee, 117 A.2d 650, 651 (N.J.Super.Ct.App.Div. 1955). Nonconforming uses are inconsistent with that purpose and are tolerated only because they are antecedent to the zoning regulation. One goal of zoning is to gradually eliminate nonconformities. Id. at 323; San Diego County v. McClurken, 234 P.2d 972 (1951). Enlargement or expansion of nonconforming uses thus violates the spirit and purpose of zoning. DeWitt, 128 Vt. at 319; 4 N. Williams, American Land Planning Law s 113.03-113.06 (1975). Such uses are not allowed to multiply. Town of Mendon v. Ezzo, 129 Vt. 351, 360 (1971). Mere increases alone in the volume of a nonconforming business use, on the other hand, is not prohibited. Frost v. Lucey, 231 A.2d 441, 447-48 (Me. 1967).

It appears that the parties also agree that the historical uses of the Old Lantern barn have qualified as a pre-existing nonconforming use; at the very least, Appellants have not presented evidence that contradicts that assertion.[10]

The Old Lantern barn's use as an events facility appears to pre-date the initial enactment of zoning; if this fact proves to be undisputed at trial, we will conclude at trial that the Old Lantern event facility has constituted a lawful pre-existing use, even though its past operation does not conform to the current Regulations. See also 24 V.S.A. §4303(15) (defining nonconforming uses as the "use of land that does not conform to the present bylaws but did conform to all applicable laws, ordinances, and regulations prior to the enactment of the present bylaws" or predates the enactment of such bylaws).

At least two questions remain, however: (1) whether the current use of the Old Lantern barn comports to its pre-existing, nonconforming use; and (2) whether the evidence presented supports a legal conclusion that such a use has been abandoned, pursuant to Regulations § 3.8(A)(3). That latter regulatory provision directs that a pre-existing, nonconforming use may not be "re-established if such use has been changed to, or replaced by, a conforming use, or if

---

[10] Appellants separately assert that the Old Lantern "discontinued" operations for a period of time in 2006 and that its right to operate as a lawful pre-existing, nonconforming use had been abandoned. Appellants further assert that improvements and expansions of use at the Old Lantern have caused it to lose its grandfathered status as a pre-existing, nonconforming use. We address both of these legal claims below.

such use has been discontinued for a period of six (6) months, regardless of the intent to resume the prior use . . ..” These two legal issues are addressed below in sections where we address the parties' respective motions and the Questions that those motions target.

Before we reach that discussion, we must address an additional procedural issue that the parties present: the scope of our review and jurisdiction over the claims presented. This issue arises because while Appellants claim (and Old Lantern does not contradict) that they raised several different claims when they complained to the Zoning Administrator, the Administrator only addressed the issue of kitchen renovations and Appellants' claims that more meals were being prepared on site.

Old Lantern initially asserted that the Zoning Administrator's reply letter, limited to the kitchen renovations and on-site meal preparation, limits the scope of our jurisdiction and review. We find no legal foundation for this assertion.

This appeal requires us to conduct a de novo review of the facts and legal issues presented, given that the Town has not elected to implement the necessary provisions for on-the-record review of their land use determinations. See V.R.E.C.P. 5(g) and (h); 10 V.S.A. 8504(h), and 24 V.S.A. 4471(b). In conducting a de novo review, we are instructed to disregard the appealed determinations of the municipal panel below. Rather, we are called upon to render our own decision, based upon the facts presented at our trial. Id. Stated differently, a de novo appeal essentially renders the decision appealed from void, since that determination is replaced by the de novo review conducted by this Court. In re Irish Constr. Application, No. 44-3-08 Vtec, slip op. at 6 (Vt. Envtl. Ct. Sept. 8, 2008) (Durkin, J.) (stating that the Court is "directed to apply those standards anew, 'as though no prior action had been taken'").

As both parties accurately reference, the Supreme Court decision in In re Torres provides us with important guidance on the limits of our jurisdiction in land use appeals: in a de novo municipal land use appeal, a reviewing court has the jurisdictional authority to address all issues presented to the municipal panel, including legal issues that the municipal panel below "might have" addressed. In re Torres, 154 Vt. 233, 236 (1990), citing In re Poole, 136 Vt. 242, 247 (1978).

Appellants here contend that this Court should review all of the claims they presented to the Zoning Administrator, given that the ZBA was charged with conducting its own de novo

review of the claims presented. We disagree, but on grounds somewhat different than those offered by Old Lantern.

First, we note that the present appeal places us in the same position as the appropriate municipal panel appealed from, which is the ZBA; we are not statutorily placed in the position of the Zoning Administrator. This distinction is important here because we interpret it to mean that we look to the claims presented to the ZBA, not the Administrator.

When a party appeals a zoning administrator's determination, they must meet specific statutory requirements concerning how they present their appeal and what their notice of appeal must contain:

> A notice of appeal shall be in writing and shall include the name and address of the appellant, a brief description of the property with respect to which the appeal is taken, a reference to the regulatory provisions applicable to that appeal, the relief requested by the appellant, and the alleged grounds why the requested relief is believed proper under the circumstances.

24 V.S.A. § 4466.

When we use these statutory requirements to assess Appellants' Notice of Appeal to the ZBA, it appears that Appellants satisfied all of these statutory requirements, even to the point of using the listing of statutory requirements as headings within their Notice. But when we look to the sections of their Notice that provide the "relief requested" and the "grounds [for] the requested relief," there is no mention of the French doors and stairs added in 2008, nor is there a specific challenge to the Old Lantern's status as a pre-existing, nonconforming use. We therefore conclude that since Appellants did not provide notice of these complaints in their Notice of Appeal to the ZBA, they cannot now present those claims to this Court for adjudication.

There is more in the undisputed facts presented that support our conclusion here. In particular, the complaints that Appellants left out of their Notice of Appeal—the French doors and stairs installed in 2008—were the subject of a previous complaint to the Zoning Administrator, to which the Zoning Administrator inquired of the Gaujacs and to which the Gaujacs responded. Their response appears to have fully satisfied the Zoning Administrator in 2008, since we have no evidence of any allegation of a zoning violation being served on the Gaujacs since 2008. Had the complaining parties felt aggrieved by the inaction of the Zoning Administrator in 2008, they had a right to complain to the ZBA, or bring their own private

-12-

enforcement action, pursuant to 24 V.S.A. § 4465. More to the point, since the goal of Appellants here is to convince the Town to initiate a zoning enforcement action against Old Lantern, premised upon the doors and stairs installed in 2008, we understand that the 2008 decision by the Zoning Administrator that those installations did not constitute a change of use would foreclose a new enforcement action by the Town based upon those claims. Further, we are at a loss to understand how an alleged zoning violation that occurred in 2008 and was complained about and investigated by the Zoning Administrator that same year is now proper for this Court to adjudicate nine years later. We therefore conclude that the 2008 renovations to the western lawn doors and stairs may not be litigated here and that the factual disputes that remain concern the kitchen renovations and other allegations specifically identified in Appellants' Notice of Appeal to the ZBA, discussed in detail below.

With these preliminary issues resolved, we turn to the legal issues presented by Appellants' Statement of Questions and the challenges surrounding those issues that have been raised in the three pending motions. Since the pending motions address overlapping and different Questions, our review below follows the numerical order of the Questions.

II.    **Question 1: Conformance with Regulations Concerning Nonconforming Uses**

By their Question 1, Appellants note that nonconforming uses are governed by Regulations §§ 1.3(D) and § 3.8, and allege that the present use of the Old Lantern Inn is "an illegal use (and therefore not a 'nonconforming use')" pursuant to those Regulations. Appellants' Statement of Questions at 1. Given the dispute of material facts concerning the complaints within our jurisdiction to adjudicate (especially concerning the kitchen renovations) we decline to enter summary judgment in Appellants' favor concerning Question 1. We look forward to each parties' presentation at trial concerning the historical use of the Old Lantern facilities and how the current activities at the Old Lantern compare to those historical uses.

Given that the referenced Regulations may need to be reviewed at trial, we note that § 1.3(D) merely reports that nonconforming uses are governed by Regulations § 3.8. We therefore will refer at trial to the provisions in § 3.8 to determine whether the Old Lantern at some historical point became grandfathered as a pre-existing, nonconforming use, and whether the current activities at the Old Lantern allow that status to be maintained.

For the same reasons—the disputes of material facts—we decline to grant Old Lantern's request that Appellants' Question 1 be dismissed or amended.

III.     **Question 2: Intensity and Nonconforming Uses**

Appellants ask by their Question 2 whether the Regulations concerning a pre-existing, nonconforming use "encompass change in the *intensity* of a nonconforming use, as contemplated by In re Miserocchi, 170 Vt. 320, 327 (2000), and did the Old Lantern undergo changes, alterations or expansions in the *intensity* of use and therefore now is in violation because no conditional use approval was granted."  Appellants' Statement of Questions at 2, filed March 7, 2016 (emphasis in the original).

Given that the central focus of Appellants' Question 2 is the "intensity of use," we look first to the applicable Regulations and how they govern such intensity.  Regulations § 3.8 does not use the word "intensity" and does not appear to regulate anything that could be regarded as "intensity."  Specifically, § 3.8 allows that pre-existing, nonconforming uses may be continued indefinitely pursuant to state law unless the use is: 1) moved or altered; 2) changed to another nonconforming use without ZBA approval; 3) discontinued for at least six months; or 4) abandoned due to structural damage for at least one year.  Regulations §§ 3.8(A)(1)–(4); accord 24. V.S.A. § 4412(7).

Appellants' Question 2 specifically cites the Supreme Court decision in Miserocchi, although we do not understand that decision to restrict an increase in the intensity of nonconforming uses.  In fact, Miserocchi specifically provides "most courts have held that a mere increase in the volume or intensity of a nonconforming business activity is not prohibited by a zoning regulation prohibiting an extension or enlargement of a nonconforming use."  170 Vt. 320, 327 (citing K. Young, Anderson's American Law of Zoning §§ 6.38, 6.50 (4th ed. 1996) and DiBlasi v. Zoning Bd. of Appeals, 624 A2d 372, 376 (Conn. 1993) (mere increase in amount of business is not illegal expansion of original nonconforming use)).

The Miserocchi Court went on to announce a conclusion that is of particular import to the circumstances alleged about the Old Lantern Inn by Appellants here:

> We recognize that a goal of zoning is to phase out nonconforming uses, see
> Weeks, 167 at 555, 712 A.2d at 910, but *absent a regulation specifically prohibiting*

*an increase in the intensity of use* of a noncomplying structure, we decline to create a rule contrary to the majority of law on this issue.

Miserocchi, 170 Vt. at 327 (emphasis added).

The Miserocchi case presented a somewhat more complicated set of facts as are presented here, since Mr. and Mrs. Miserocchi were attempting to expand the use of a preexisting structure that did not comply with the current zoning regulations. The trial court had concluded that the Miserocchis were not entitled to use the portion of their barn that encroached into the front yard setback. Id. at 323. The Supreme Court reversed that determination, and held that because the structure pre-dated zoning, the use of the entire structure constituted a pre-existing nonconforming use. Id. at 325.

The Supreme Court also reversed the trial court's determination that the conversion of the Miserocchi barn from an agricultural use to a residential use should be denied because it would likely increase the "intensity of its use" of the noncomplying structure. In reversing that trial court ruling, the Supreme Court concluded that since the applicable zoning regulations did "not specifically address an increase in intensity of use" the regulations could not be used to restrict the Miserocchis' planned use, even if it would increase its "intensity." Id. at 327.

The Charlotte Regulations do not regulate or restrict an increase in the intensity of a nonconforming use. The Old Lantern disputes that there has been an increase in the intensity of their use. For both these reasons, we **DENY** Appellants' summary judgment motion as to their Question 2. Further, in the absence of language in the Regulations that regulates or restricts an increase in the intensity of a nonconforming use, we must **DISMISS** Appellants' Question 2 as non-judiciable.

IV.     **Question 3: Changes to Old Lantern's Nonconforming Use**

By their Question 3, Appellants ask "[i]f the Old Lantern was a nonconforming use, did the Old Lantern undergo changes, alterations or expansions other than an increased intensity of use" that caused it to lose its lawful status. In light of our analysis above concerning the limits of our jurisdiction and review of Appellants' claims, we focus our analysis to the "changes, alterations, and expansions" to the Old Lantern kitchen and its on-site meal preparation.

We must first begin our analysis of this Question with a review of what activities the Regulations restrict in regards to nonconforming uses. The relevant Regulation directs that pre-existing nonconforming uses may not be moved or altered. Regulations §§ 3.8(A)(1). We note that it does not appear that we have facts or allegations presented to us that the Old Lantern use has been "moved." We therefore focus our analysis of Appellants' Question 3 on the sole term from the regulations that seems applicable: alterations.

Old Lantern disputes that the Inn's operation as an event facility has been altered; in fact, they assert that the use has remained consistent throughout its over sixty years of operation. We therefore have a dispute as to a material fact that may only be resolved by trial.

As the parties prepare for trial, we suggest that they review the <u>Miserocchi</u> decision and its progeny. Absent a specific regulatory restriction on an increase in intensity, we do not understand that the Town has authorized this Court to conclude that an intensity increase can be restricted. Further, we understand that a "change of use" means a different use, and not some changes that may have been made to the same use. This appeal may present a clear example of this distinction, dependent upon what credible facts are presented at trial: we do not regard a replacement of doors and stairs that had previously been used at an ongoing event facility to constitute a "change of use." Rather, dependent upon the credible facts presented at trial, it may be regarded as a continuation of the same use.

For these reasons, we **DENY** Appellant's request that summary judgment be entered in their favor upon their Question 3. For the same reasons as previously stated, we **GRANT** Old Lantern's request that Question 3 be limited in scope. However, we conclude that Appellant's Question 3 should be limited to the legal issues raised in Appellants' Notice of Appeal to the ZBA, and not limited to the legal issues addressed by the Zoning Administrator, as Old Lantern initially suggested in its motion.

## V.     **Question 4: Changes to Another Nonconforming Use**

By their Question 4, Appellants ask if "the Old Lantern's nonconforming use change[d] to another nonconforming use," in a manner that was a violation of Regulations § 3.8(A)(2).[11] That

---

[11] While Appellants' Question 4 does not specifically reference Regulations § 3.8(A)(2), we understand the remaining language of Question 4 to be sourced from that Regulation.

regulation prohibits a change from a pre-existing use to another use not permitted by the current Regulations. Id. However, we do not understand that there has been any representation that the Old Lantern's pre-existing, nonconforming use—wedding and event facility—has ceased and been replaced by another nonconforming use. Appellants' legal analysis, while thorough, appears to conflate distinct regulatory provisions by referencing the Performance Standards (Regulations § 3.12) and Conditional Use provisions (Regulations § 5.4) with the Regulations governing pre-existing, nonconforming uses (§ 3.8). If at trial the Old Lantern Inn is determined to be a pre-existing, nonconforming use that has continuously operated, we do not understand that the Regulations or the enabling statute (24 V.S.A. § 4412(7)) authorize the Town to regulate the Old Lantern's nonconforming use under the Performance Standards or Conditional Use provisions, which speak in various ways to "intensity" and impacts. Rather, only if Old Lantern is determined to <u>no longer enjoy</u> the grandfathered status of a pre-existing, nonconforming use may the Old Lantern, in a separate, future municipal proceeding be subject to the Performance Standards and Conditional Use provisions.

More to the point of the legal issues raised by Question 4, we interpret a change to another nonconforming use to be something more than possible changes to how a pre-existing use is conducted. Again, it appears that replacing doors and steps may prove at trial to be an appropriate example of this distinction from a change of how a nonconforming use is conducted to a wholly different use.

Absent evidence presented that Old Lantern has been changed to a wholly different use, conforming or not, we conclude that Appellants have failed to present any facts to support the assertions made in their Question 4. We therefore **DISMISS** their Question 4.

VI.   **Question 5: Discontinuance of Use for Six Months or More**

By their Question 5, Appellants ask whether the Old Lantern discontinued its use for six months or more and therefore lost its grandfathered status as a pre-existing, nonconforming use. If such an allegation were true, Old Lantern could no longer be regarded as a pre-existing, nonconforming use, pursuant to Regulations § 3.8(A)(3).

Appellants appear to allege that the Old Lantern Inn experienced a reduction in event activity, particularly just before and shortly after Mr. and Mrs. Gaujac purchased the property.

We do not understand Appellants to specifically allege a "discontinuance" of all event activities, and we do not understand Appellants to allege a specific duration of six months or more. Nonetheless, since Appellants make some allegation that could be detailed at trial that may invoke Regulations § 3.8(A)(3), we **DENY** Old Lantern's request to dismiss this Question 5. We direct the parties to focus their trial presentation on the specific facts required under § 3.8(A)(3): whether there has been a specific discontinuance of the Old Lantern's event business and whether any discontinuance has lasted six months or more.

VII.  **Question 6: Do the Performance Standards Apply to Nonconforming Uses**

By their Question 6, Appellants ask whether the Performance Standards codified in Regulations § 3.12 apply to nonconforming uses and if they do, do they apply to the Old Lantern. This Question appears to present a purely legal question that can be answered prior to trial.

First, we note an assumption: we assume that Appellants' Question 6 is premised upon the nonconforming use being regarding as lawfully pre-existing and therefore enjoying the grandfathered status recognized by 24 V.S.A. § 4412(7). We make this assumption because if a nonconforming use is not regarded as pre-existing, is must be regarded as merely an unpermitted use that must comply with all applicable zoning regulations. To understand this distinction and the rationale for allowing nonconforming uses to continue, we refer again to the precedent of our Supreme Court's decision in DeWitt: while the ultimate goal of zoning regulations is to eliminate nonconforming uses, such uses that pre-date the current regulations must be "tolerated." DeWitt, 128 Vt. at 319. Uses that were once lawful but now do not conform to current zoning regulations are allowed to continue in their current form "due to the fairness and due process concerns of the landowner." King Cty., Dep't of Dev. & Envtl. Servs. v. King Cty., 305 P.3d 240, 244 (Wash. 2013) (citing Rhod–A–Zalea & 35th, Inc. v. Snohomish County, 959 P.2d 1024 (Wash. 1998)).

We again note that a mere increase in intensity of a nonconforming use will not be grounds for requiring that the pre-existing use conform to the current zoning regulations, unless the current regulations specifically state that increases in intensity are prohibited. Our Supreme Court established this precedent in a case that provides guidance here.

> An enlargement or expansion of a nonconforming use, rather than a mere increase in business, is indicated where new facilities or a new product is involved. See San Diego County v. McClurken, [37 Cal.2d 683, 234 P.2d 972 (1951)]; Connecticut Sand & Stone Corp. v. Zoning Board of Appeals, 150 Conn. 439, 190 A.2d 594 (1963). In the instant case, appellant commenced in 1975 to offer its customers a new product concrete mixed by appellant's trucks at the job site. New facilities in the form of a new cement screw or auger in a cement tower were installed by appellant so that materials from its place of business could be more easily loaded into its trucks. Two new trucks were purchased to deliver and mix the concrete. Any manufacturing of concrete by appellant in its trucks, whether on or off the premises, is far different than its prior nonconforming use of on-premises manufacture of concrete bricks and blocks and sale of building materials. It constitutes an expansion and enlargement of the nonconforming use forbidden by the zoning regulations absent permission by [the municipality].

Vermont Brick & Block, Inc. v. Vill. of Essex Junction, 135 Vt. 481, 483–4 (1977).

If a use is established as lawfully pre-existing, it may not be regulated, even if it does not conform to the current zoning regulations. Id. at 483. Stated differently, to impose zoning regulations upon an already lawfully established use violates both the provisions of 24 V.S.A. § 4412(7) and the due process protections of that property owner.[12] King Cty., 305 P.3d at 244 (citing Rhod–A–Zalea, 959 P.2d 1024). Given this well-established precedent, we are able to answer the sole legal issue raised by Appellants' Question 6 in the following manner: the Performance Standards codified in Regulations § 3.12 do not apply to pre-existing, nonconforming uses. See Purvis Nonconforming Use, No. 45-5-15 Vtec, slip op. at 8 (Vt. Super. Ct. Envtl. Div. Jan. 27, 2016) (Durkin, J.) ("Nonconforming uses are not violations—they are fully lawful uses.").

VIII. **Question 7: Do the Performance Standards Apply to the Old Lantern Due to Prior Approvals**

Appellants ask by their Question 7 whether the same Performance Standards referenced above apply to the Old Lantern Inn "because it applied for and obtain[ed] zoning approvals after the Town of] Charlotte adopted performance standards."

---

[12] State law does allow a municipality to regulate a nonconforming use "to abate public nuisances or to abate or remove public health risks or hazards." 24 V.S.A. § 4412 (7)(C).

We are confused by Appellants' Question 7.  There have been no specific facts presented that Old Lantern applied for zoning approvals.  For that matter, there have been no facts presented about when the Performance Standards were enacted.  Given this material confusion, we conclude that Appellants' Question 7 is non-judiciable and therefore **GRANT** Old Lantern's motion to dismiss that Question.

IX.     **Question 8: Are these and the Prior ZBA Proceedings De Novo?**

By their Question 8, Appellants present a two-part legal issue that is successive in nature: if the answer to the first part of this Question is answered in the affirmative, the second part of the Question becomes moot.  Since both parts of this Question 8 appear to ask a solely legal question, we address it in this pre-trial decision.

This Question also lacks some clarity.  No party has disputed that this Court must conduct a de novo review of the legal and factual issues preserved for our review.  Nor does any party dispute that the ZBA was obligated to conduct a de novo review of Appellants' appeal from the Zoning Administrator's determination.  We therefore answer the first part of Appellants' Question 8 in the affirmative: both the ZBA and this Court must conduct de novo reviews.

In de novo reviews, our task <u>is not</u> to determine whether the decision appealed from was "in error"; our task is to receive admissible evidence and render our own determination.  We therefore decline the apparent invitation in Appellants' Question 8 to review the propriety of the ZBA decision rendered below.  Rather, as explained in our discussion above, we look to the Appellants' Notice of Appeal filed with the ZBA as setting the parameters of what issues we have the jurisdictional authority to consider.

It appears that Appellants might be asserting that because both the ZBA and this Court must conduct de novo reviews, we must look to the claims that they presented to the Zoning Administrator.  They provide no authority for this legal position and our own research has revealed none, either.  More to the point, to adopt Appellants' reasoning, we would have to ignore the long-standing precedent of <u>Torres</u> and the statutory requirements for presenting appeals to the ZBA found in 24 V.S.A. § 4466.  We decline to do so here.

## CONCLUSION

For all the reasons stated above, we conclude that Appellants' Questions 1, 3, and 5 raise factual issues that are disputed and therefore must await trial to be resolved. Such Questions are limited for trial in the manner expressed above. Appellants Questions 2 and 4 are **DISMISSED**. Lastly, since Appellants' Questions 6, 7 and 8, present solely legal questions, we have answered those Questions above and they no longer need be addressed at trial.

Electronically signed on July 3, 2017 at Brattleboro, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Judge
Environmental Division